## KRIPPENDORF *v.* HYDE & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

Submitted January 2d, 1884.—Decided January 28th, 1884.

*Equity—Jurisdiction—Officers of the Court—Parties.*

A bill filed on the equity side of the court to restrain or regulate judgments or suits at law in the same court, and thereby prevent injustice or an inequitable advantage under mesne or final process, not being an original suit, but ancillary and dependent, supplementary merely to an original suit out of which it arose, can be maintained without reference to the citizenship or residence of the parties. *Freeman* v. *Howe*, 24 How. 450, followed, and the language of NELSON, J., in the opinion of the court adopted.

The powers both of courts of equity and courts of law over their own process to prevent abuse, oppression, and injustice are inherent and equally extensive and efficient : as is also their power to protect their own jurisdiction and officers in the possession of property that is in the custody of the law.

When property in the possession of a third person claiming ownership is attached by a marshal on mesne process issuing out of a Circuit Court of the United States as the property of a defendant, citizen of the same State as the person claiming it, such person has no adequate remedy against the marshal in the State court, and may seek redress in the Circuit Court having custody of the property by ancillary proceedings ; as, for instance, if the original proceeding is in equity, by a petition *pro interesse suo*, or by ancillary bill, or by summary motion, according to circumstances ; or if it is at common law, by a summary motion or by a proceeding in the nature of an interpleader ; or if proceedings authorized by statutes of the State in which the cause is pending afford an adequate remedy, by adopting them as part of the practice of the court.

In equity.—In September, 1882, two of the defendants, partners as Hyde & Brothers, brought an action at law in the Circuit Court against Lewis C. Frey and Jacob C. Maag, partners as Frey & Maag, to recover an amount alleged to be due for goods and merchandise sold, and levied a writ of attachment issued therein on a stock of goods in the city of Indianapolis, as the property of Frey & Maag, which was in the possession of the appellant, and of which, at that time, as he alleged, he was owner. The property was appraised as required by the statutes of Indiana, and its value returned at the sum of $13,165.64. The goods were returned to the appellant on his

giving to the marshal a delivery bond, conditioned to properly keep and take care of the property, and deliver the same to the marshal on demand, or so much thereof as might be required to be sold on execution to satisfy any judgment which might be recovered against the defendants in the action, or to pay the appraised value of the property, not exceeding the amount of the judgment and costs. The appellant was made on his own motion a party defendant to the suit in order to assert his title, but on motion of the plaintiff, his name was stricken from the record without prejudice to his right to enforce his claim in some other form. Such further proceedings were then had, that, as provided by the statute, a large number of the creditors of Frey & Maag came into the attachment suit for the purpose of obtaining judgments and participating in the distribution of the fund arising from the sale of the attached property. Judgment was subsequently rendered therein in favor of the original plaintiffs, and of these several creditors respectively, and it was ordered that the attached property be sold by the marshal for the satisfaction thereof. The appellant, as required by the condition of his bond, not being able to return the specific property attached, paid to the marshal the full amount of its appraised value. He thereupon, the money being in the marshal's hands, undistributed, filed his bill, to which all the parties in the attachment suit and the marshal were made defendants, praying that the marshal be restrained from paying the said fund, or any part thereof, to the creditors in the attachment suit, and that the same be adjudged to belong to the appellant, and paid to him accordingly.

It was alleged that all the attachment creditors were non-residents of the State of Indiana; but it did not appear from the record what was the citizenship of any of the parties to the bill.

The Circuit Court dismissed the bill for want of equity, on the ground that the complainant had a plain and adequate remedy at law ; from which decree an appeal was taken.

*Mr. D. V. Burns* for appellant.

*Mr. Lew Wallace* and *Mr. A. W. Hatch* for appellee.—Under the statutes of the State of Indiana, which would control in any action brought to recover the possession of the goods seized by the marshal, Krippendorf could have obtained the specific property and also damages for its detention. Rev. Stat. of Indiana, 1881, § 1266. That such an action would lie, see Drake on Attachment, § 340 ; *Louthain* v. *Fitzer,* 78 Ind. 449. Replevin was appellant's proper remedy. Still, in the abundance of legal redress, he is permitted a choice, and may now maintain, upon the facts averred, an action in trespass against the marshal for the wrongful seizure. There is no impediment to such proceedings shown, and no claim in the bill or in argument that the marshal is unable to respond in damages. It seems to us not only that the legal remedy is adequate, but that the relief at law is the very same as the relief afforded by a court of equity. It is elementary that where the legal remedy is adequate and certain, equity has no jurisdiction. Appellant's counsel attempt to break the force of this conclusion by insisting that as the court of equity only supplements the proceedings at law, the usual prerequisites of original jurisdiction need not exist. This is true as applied to parties, but is far from true if made to govern principles. We have selected from the vast number of cases upon this subject those similar to that under consideration, and we refer the court to such authorities with the conviction that this subject is no longer a matter for controversy. *Miller* v. *Crews,* 2 Leigh (Va.), 576 ; *Hamilton* v. *Shrewsbury,* 4 Randolph (Va.), 427 ; *Bowyer* v. *Creigh,* 3 Randolph (Va.), 25 ; *Allen* v. *Freeland,* 3 Randolph (Va.), 170 ; *Whitman* v. *Willis,* 51 Texas, 429 ; *Henderson* v. *Morrill,* 12 Texas, 1 ; *Davidson* v. *Seegar,* 15 Florida, 671 ; *Akin* v. *Davis,* 14 Kansas, 143 ; *Baker* v. *Rinehard,* 11 W. Va. 238 ; *Stilwell* v. *Oliver,* 35 Arkansas, 184 ; *Sheldon* v. *Stokes,* 7 Stewart (N. J.), 87 ; *Dawes* v. *Taylor,* 8 Stewart (N. J.), 40 ; *Freeman* v. *Elmendorf,* 3 Halsted Ch. (N. J.) 475, 655 ; *Greenup* v. *Brown,* Breese (Ill.), 252 ; *Coughron* v. *Swift,* 18 Illinois, 414 ; *Winch's Appeal,* 61 Penn. St. 424 ; *Imlay* v. *Carpentier,* 14 California, 173 ; *Markley* v. *Rand,* 12 California, 275 ; *Johnson* v. *Bank,* 21

Connecticut, 148 ; *Watkins* v. *Logan*, 3 T. B. Monroe (Ky.), 21 ; *Bouldin* v. *Alexander*, 7 id. 425 ; *Hall* v. *Davis*, 5 J. J. Marshall (Ky.), 290 ; *Gurby* v. *Bell*, 40 Georgia, 133 ; *McIndoe* v. *Hazleton*, 19 Wisconsin, 567 ; *Macy* v. *Lloyd*, 23 Ind. 60 ; *Lewis* v. *Levy*, 16 Maryland, 85 ; *Freeland* v. *Reynolds*, 16 Id. 416 ; *Chappell* v. *Cox*, 18 Id. 513 ; *Hammond* v. *St. John*, 4 Yerger (Tenn.), 107 ; *Du Pre* v. *Williams*, 5 Jones Eq. (N. C.) 96 ; *Howell* v. *Howell*, 5 Iredel Eq. (N. C.) 258 ; *Garstin* v. *Asplin*, 1 Maddock Ch. 150. In *Pennock* v. *Coe*, 23 How. 117, and in *Freeman* v. *Howe*, above cited, the complainants had equitable claims to the property, and there was thus no doubt as to the jurisdiction. In *Gue* v. *The Tide Water Canal Company*, 24 How. 257, the relief was granted because a court of law could not fully protect all interests. Mr. Justice Nelson did not intend to make his remarks of universal application, but had in mind only the case before him. This same comment has been made upon *Freeman* v. *Howe*, by this court, in *Buck* v. *Colbath*, 3 Wall. 334, and *Christmas* v. *Russell*, 14 Wall. 69. In *Buck* v. *Colbath*, commenting upon what was said of equitable proceedings in *Freeman* v. *Howe*, this court said : " The proceeding here alluded to is one unusual in any court, and is only to be resorted to in the federal courts, in extraordinary cases where it is essential to prevent injustice by an abuse of the process of the court, *which cannot otherwise be remedied.*" Taking all these cases together, we see nothing in them entrenching upon our position. The law, as well settled is, that to supplement proceedings at law, equity will only interfere in proper cases for equitable relief ; and the test is whether the remedy at law is adequate and certain. That Krippendorf upon the facts stated in his bill has such remedy at law, is not an open question in this court. See *Buck* v. *Colbath*, above cited, and *Sharpe* v. *Doyle*, 102 U. S. 686.

Mr. Justice Matthews delivered the opinion of the court. After reciting the facts in the language above stated, he continued :

According to the law of Indiana, the giving of the delivery bond did not divest the lien of the attachment upon the goods,

which remained, in contemplation of law, in the possession of the officer, *Gass* v. *Williams*, 46 Ind. 253; so that if the proceedings had been in the State court the appellant, while the goods remained in specie, on demand and refusal of a return of the property to him by the officer, might have maintained an action of replevin on proof of title. *Louthain* v. *Fitzer*, 78 Ind. 449.

Having disposed of the goods, so that he could not return them in specie, it would seem that no action of replevin could thereafter be brought, and, on general principles, he could not set up his ownership as a defence to an action on the bond. Drake on Attachment, § 340. Under the practice in Indiana he would not be permitted to become a party to the suit in order to have his title there determined. *Risher* v. *Gilpin*, 29 Ind. 53. And, accordingly, in the attachment suit of Hyde Brothers against Frey & Maag, as stated in the bill, the appellant, having been at first made a party on his own motion, was subsequently dismissed from it. Payment of the appraised value of the attached property to the marshal, which, by the terms of the delivery bond, he was bound to make, it can hardly be insisted deprived him of his title to the goods and their proceeds. Without giving the delivery bond, it is true, the owner could have brought suit against the marshal for trespass, although that would not in all cases furnish an adequate remedy by giving damages for the value of the property taken. *Watson* v. *Sutherland*, 5 Wall. 74.

The only legal remedy which can be said to be adequate for the purpose of protecting and preserving his right to the possession of his property was an action of replevin. Of this remedy at law in the State court he was deprived by the fact that the proceedings in attachment were pending in a court of the United States, because the property attached, being in the hands of the marshal, is regarded as in the custody of the court. This was the point decided in *Freeman* v. *Howe*, 24 How. 450, the doctrine of which must be considered as fully and firmly established in this court. In meeting the objections made in argument to the conclusion of the court in that case, Mr. Justice Nelson, delivering its opinion, used the following language:

"" Another misapprehension under which the defendant in error labors, and in which the court below fell, was in respect to the appropriate remedy of the plaintiffs in the replevin suit for the grievance complained of. It was supposed that they were utterly remediless in the federal courts, inasmuch as both parties were citizens of Massachusetts. But those familiar with the practice of the federal courts have found no difficulty in applying a remedy, and one much more effectual than replevin, and more consistent with the order and harmony of judicial proceedings, as may be seen by reference to the following cases : 23 How. 117 ; *Pennock et al.* v. *Coe ; Robert Gue* v. *The Tide Water Canal Company,* 24 How. 257 ; 12 Pet. 164 ; 8 id. 1 ; 5 Cranch, 288.

" The principle is that a bill filed on the equity side of the court to restrain or regulate judgments or suits at law in the same court, and thereby prevent injustice or an inequitable advantage under mesne or final process, is not an original suit, but ancillary and dependent, supplementary merely to an original suit out of which it has arisen, and is maintained without reference to the citizenship or residence of the parties."

" The case in 8 Pet. 1, which was among the first which came before the court, deserves, perhaps, a word of explanation. It would seem, from a remark in the opinion, that the power of the court upon the bill was limited to a case between the parties to the original suit. This was probably not intended, as any party may file the bill whose interests are affected by the suit at law."

It has been sometimes said that this statement was *obiter dictum*, and not to be treated as the law of the case ; but it was, in point of fact, a substantial part of the argument in support of the judgment, and, on consideration, we feel bound to confirm it in substance as logically necessary to it. For if we affirm, as that decision does, the exclusive right of the Circuit Court in such a case to maintain the custody of property seized and held under its process by its officers, and thus to take from owners, wrongfully deprived of possession, the ordinary means of redress by suits for restitution in State courts, where any one may sue, without regard to citizenship, it is but common justice to furnish them with an equal and adequate remedy in the court itself which maintains control of the property ; and, as this may

not be done by original suits, on account of the nature of the jurisdiction as limited by differences of citizenship, it can only be accomplished by the exercise of the inherent and equitable powers of the court in auxiliary and dependent proceedings incidental to the cause in which the property is held, so as to give to the claimant, from whose possession it has been taken, the opportunity to assert and enforce his right. And this jurisdiction is well defined by Mr. Justice Nelson, in the statement quoted, as arising out of the inherent power of every court of justice to control its own process so as to prevent and redress wrong.

This principle was illustrated and applied in the case of *Bank* v. *Turnbull*, 16 Wall. 190. There, under a statute of Virginia, the claimant of property taken in execution upon a judgment rendered against another, gave to the sheriff a suspending and forthcoming bond, which stayed the sale and maintained his possession of the property until the title could be determined by a statutory interpleader. This issue having been properly directed in the State court, between parties who were citizens of different States, a petition was filed for its removal to the Circuit Court of the United States, under the removal act of March 2d, 1867. The order of removal was reversed by this court on the ground that the suit " was merely auxiliary to the original action, a graft upon it, and not an independent and separate litigation ; " that " it was provided to enable the court to determine whether its process had, as was claimed, been misapplied, and what right and justice required should be done touching the property in the hands of its officers. It was intended to enable the court, the plaintiff in the original action, and the claimant to reach the final and proper result by a process at once speedy, informal, and inexpensive."

No one, even in equity, is entitled to be made or to become a party to the suit unless he has an interest in its object, Calvert on Parties, 13 ; yet it is the common practice of the court to permit strangers to the litigation, claiming an interest in its subject-matter, to intervene on their own behalf to assert their titles.

" When any person," says Mr. Daniel, Chancery Practice, ch. XXVI., § 7, p. 1057, " claims to be entitled to an estate or other property sequestered, whether by mortgage or judgment, lease or otherwise, or has a title paramount to the sequestration, he should apply to the court to direct an inquiry whether the applicant has any and what interest in the property sequestered. This inquiry is called an examination *pro interesse suo ;* and an order for such an examination may be obtained by a party interested, as well where the property consists of goods and chattels or personalty, as where it is real estate. Thus, in *Martin* v. *Willis,* 1 Fowl. Ex. Pr. 160, a person claiming title to goods seized under a sequestration, obtained an order for an examination *pro interesse suo,* and in the meantime that the goods might be restored to him on his giving security."

The same practice prevails in cases where property is put into the hands of a receiver. Daniel, Ch. Pr., ch. XXXIX., § 4, p. 1744. The grounds of this procedure are the duty of the court to prevent its process from being abused to the injury of third persons, and to protect its officers and its own custody of property in their possession, so as to defend and preserve its jurisdiction, for no one is allowed to question or disturb that possession except by leave of the court.

So the equitable powers of courts of law over their own process to prevent abuse, oppression, and injustice are inherent and equally extensive and efficient, as is also their power to protect their own jurisdiction and officers in the possession of property that is in the custody of the law, *Buck* v. *Colbath,* 3 Wall. 334; *Hagan* v. *Lucas,* 10 Pet. 400; and when in the exercise of that power it becomes necessary to forbid to strangers to the action the resort to the ordinary remedies of the law for the restoration of property in that situation, as happens when otherwise conflicts of jurisdiction must arise between courts of the United States and of the several States, the very circumstance appears which gives the party a title to an equitable remedy, because he is deprived of a plain and adequate remedy at law ; and the question of citizenship, which might become material as an element of jurisdiction in a court of the United States when the proceeding is pending in it, is obviated by

treating the intervention of the stranger to the action in his own interest, as what Mr. Justice Story calls, in *Clarke* v. *Mathewson*, 12 Pet. 164–172, a dependent bill.

In the original action of Hyde Brothers against Frey and Maag, in which the attachment was issued and levied, the jurisdiction of the Circuit Court attached by reason of the citizenship of the parties. But the statute of Indiana granting and regulating the process of attachment, provides, § 943 Rev. Stat. of 1881, that after the institution of the suit, and at any time before final judgment, any creditor of the defendant may file and prove his claim, with the right to participate in the distribution of the proceeds of the attached property. In the present case that actually took place, and it is shown, on the face of the bill, that a large number of persons, as to whom it is not stated that they were citizens of other States, competent to bring an original action in the Circuit Court, and as to whom it does affirmatively appear, that the judgments upon their claims in their favor are less than the jurisdictional sum of $500, nevertheless, filed their claims, obtained judgments, and will be entitled on distribution to divide with the plaintiff and among themselves the money paid into court by the appellant. So that, unless he is allowed to intervene by his present bill to stay the distribution of the fund, which, by the demurrer, is admitted to be his own, the anomaly will be presented, in judicial proceedings, of an award, dividing property among claimants, from which the only person excluded is the one whose sole and paramount title is confessed; and he will be compelled to stand idly by to witness the dissipation of his property into many unknown hands, by a court, to whose jurisdiction he has submitted himself from the beginning, and which now remits him to an action for damages against its own officer who has simply acted under its order.

This court has uniformly resisted the tendency to confuse the boundaries of law and equity in its procedure, and maintained the distinction between the two systems, so deeply imbedded in our jurisprudence; and in the present instance, is not to be considered as departing from the consistent course of precedents in which that distinction has been maintained. The

bill in this case is not be treated as an original bill in equity, for, as such, it could not be maintained. It is altogether ancillary to· the principal action at law in which the attachment issued, and should be regarded as merely a petition in that cause, or dependent upon it and connected with it, as a petition *pro interesse suo,* or of intervention in an equity or an admiralty suit, asserting a claim to property or a fund in court, the subject of the litigation, which, owing to the peculiar relations between the courts of the States and of the United States, is a necessary resort to prevent a failure of justice, and furnishes in such cases a certain, adequate, and complete remedy against injurious abuses of the process of the court, by supplying a means, in the principal suit, of trying the title to property in the custody of the law.

The character of the bill as related to the principal case is well explained in *Minnesota Company* v. *St. Paul Company*, 2 Wall. 609–633, where it is stated,

" that the question is not whether the proceeding is supplemental and ancillary, or is independent and original in the sense of the rules of equity pleading, but whether it is supplemental and an-·· cillary, or is to be considered entirely new and original, in the sense which this court has sanctioned, with reference to the line which divides the jurisdiction of the federal courts from that of the State courts. No one, for instance, would hesitate to say, that according to the English chancery practice a bill to enjoin a judgment at law is an original bill in the chancery sense of the word. Yet, this court has decided many times that when a bill is filed in the Circuit Court to enjoin a judgment of that court, it is not to be considered as an original bill, but as a continuation of the proceeding at law ; so much so that the court will proceed in the injunction suit without actual service of subpœna on the defendant, and though he be a citizen of another State, if he were a party to the judgment."

And in speaking of the application of the principle to the case then before it, the court, Mr. Justice Miller delivering its opinion, continued :

" The case before us is analogous. An unjust advantage has

been obtained by one party over another by a perversion and abuse of the orders of the court, and the party injured comes now to the same court to have this abuse corrected, and to carry into effect the real intention and decree of the court, and that while the property, which is the subject of the contest, is still within the control of the court and subject to its order."

The question was discussed in *Van Norden* v. *Morton*, 99 U. S. 378, where the court pointed out the mode of reconciling the distinction between original legal and equitable rights and remedies, as administered in the courts of the United States, and ancillary proceedings to restrain and control their process. Referring to the statutory injunction given by the law of Louisiana to restrain "the sheriff in the execution of a judgment" when "he has seized property not belonging to the defendant, and insists on selling the same, disregarding the opposition of him who alleges that he is the real owner," Mr. Justice Miller, delivering the opinion of the court, said:

"Now this obviously refers to the control of the court over its own officer, in the execution of its own writs, and is as applicable to other misconduct of that officer in the execution of his official duties, as in cases of seizures of property not liable under an execution in his hands. The remedy needs no formal chancery proceeding, but a petition or motion, with notice to the sheriff, is not only all that is required, but is the most speedy and appropriate mode of obtaining relief. This relief does not depend upon any inadequacy of an action for damages or by sequestration. It is a short, summary proceeding before the court under whose authority the officer is acting, gives speedy relief, and is very analogous to the statutory remedy given in many of the Western States in similar cases to try the right of property at the instance of the party whose property is wrongfully seized."

It is in this light, we think, that the court below should have regarded the present bill, not as an original bill invoking the general jurisdiction of the court in equity, but as an ancillary and dependent bill, equivalent in effect and purpose to a petition in the attachment proceeding itself, incident to and dependent upon it.

The form of the proceeding, indeed, must be determined by the circumstances of the case. If the original cause, in which the process has issued or the property or fund is held, is in equity, the intervention will be by petition *pro interesse suo*, or by a more formal, but dependent bill in equity, if necessary. Relief, either in a suit in equity, or an action at law, may properly be given, in some cases, in a summary way, by motion merely, supported by affidavits. In actions at law, where goods have been taken in execution after judgment, or upon attachment before, a proceeding in the nature of an interpleader might be appropriately ordered by the court, such as was given in the English practice to the officer by the statute of 1 & 2 Will. 4, c. 58; 2 Lush's Pr. by Dixon, 777; and in that the respective rights of the claimants to the property could generally be tried as in an action at law by a jury, upon a formal issue framed for that purpose, or with the consent of the parties by the court; or, if the claim was such as that it could be determined only upon principles of equity, as administered in courts of that general jurisdiction, it would be proper to provide relief upon a bill of that nature, filed for that purpose. If the statutes of the State contained provisions regulating trials of the right of property in such cases, it might be most convenient to make them a part of the practice of the court, as contemplated by §§ 914, 915, 916 of the Revised Statutes. In whatever form, however, the remedy is administered, whether according to a procedure in equity or at law, the rights of the parties will be preserved and protected against judicial error, and the final decree or judgment will be reviewable, by appeal or writ of error, according to the nature of the case.

For the reasons given, we are of opinion that the Circuit Court should have overruled the demurrer to the bill, and required the parties to try the issue tendered by the appellant. The decree dismissing the bill is accordingly reversed, and the cause remanded with direction to take such further proceeding therein, in conformity with this opinion, as justice and equity require.

*It is accordingly so ordered.*