Gaines, Collector, v. Springer.

GAINES, COLLECTOR, v. SPRINGER.

1. JURISDICTION: *Injunction of federal process by state courts.*
   A state court cannot enjoin the collection of a tax levied pursuant to a mandamus issued by a federal court to enforce the payment of its judgments.

2. SAME: *Of federal court to enjoin its judgment. Citizenship.*
   A bill filed in a federal court to enjoin the collection of a tax levied in pursuance of its mandamus for payment of a judgment rendered by it would not be an original suit, but ancillary and dependent—supplementary, merely, to the original suit in which the mandamus was issued, and would be maintained without reference to the residence or citizenship of the parties.

APPEAL from *Chicot* Circuit Court in Chancery.
Hon. J. M. BRADLEY, Circuit Judge.

*J. G. B. Simms* and *Dodge & Johnson*, for appellant.
*D. H. Reynolds*, for appellee.

BATTLE, J. Plaintiff, Levi H. Springer, states, in his complaint on file herein, among other things, as follows: That he was the owner of the east half of section 30, in township 18 south, and in range 2 west, in Chicot county, and of personal property; that this tract of land was assessed for taxation for the year 1884 at $320, and his personal property at $360; that the total valuation of the assessment of the real estate of Chicot county for 1884 is $983,032, and of the personal property $346,385, amounting in the aggregate to the sum of $1,329,417.

That various persons, having judgments in the circuit court of the United States for the eastern district of Arkansas against the county of Chicot on coupons of bonds issued to certain railroad companies, amounting in the aggregate to over $120,000, obtained various writs of mandamus from the said circuit court of the United States, commanding the county court of Chicot county to levy a tax sufficient to pay the aggregate amount of said judgments; and that thereafter the county court, composed of the county judge and some of the justices of the peace of Chicot county, met on the third Monday in July, 1884, at the court-house of said county, "for the purpose of levying the county taxes and making appropriations for the expenses of the county," for the year 1884, and levied, among other taxes, a tax of 20 mills on the dollar on the taxable property of the county to pay said judgments so far as it would extend; that the tax of 20 mills is illegal and void, for many reasons stated, which are unnecessary to mention in this opinion.

The prayer of the complaint is that the collection of the 20 mills tax be perpetually enjoined.

The defendant, Abner Gaines, collector of Chicot county, demurred to the complaint, because the facts therein stated were not sufficient to constitute a cause of action. The

Gaines, Collector, v. Springer.

court overruled the demurrer, and the defendant electing to rest on his demurrer, a decree was rendered perpetually restraining and enjoining the collection of the 20 mills tax, and the defendant appealed.

1. Injunction of federal process by state courts "As a general rule the state courts refuse to trespass upon the clearly established jurisdiction of the United States courts, and refuse to grant injunctions against the enforcement of judgments recovered in those courts, preferring that whatever ground of equitable relief may exist against such judgments should be urged in the United States courts themselves. Especially will the state courts refuse to interfere in cases where jurisdiction is expressly conferred by statute upon the federal courts, as in the case of a judgment for an infringement of letters patent. And as between the state and federal courts, in which this jurisdiction is co-ordinate over the same subject matter, that court which first obtains jurisdiction will be left to retain it to the end, and its process will not be interfered with by injunction from the other tribunals." *1 High on Injunctions, sec. 266.*

In *Taylor v. Carryl, 20 How., 583,* it was held "that the property seized by the sheriff under the process of attachment from the state court, and while in the custody of that officer, could not be seized or taken from him by a process from the district court of the United States, and that the attempt to seize it by the marshal, by a notice or otherwise, was a nullity, and gave the court no jurisdiction over it, because to give jurisdiction to the district court, in a proceeding *in rem,* there must be a valid seizure and an actual control of the *res* under the process."

*Freeman v. Howe, 24 How., 450,* was an action of replevin instituted in a state court against a United States marshal to recover possession of property held by the marshal under process of attachment issued by a clerk of a United

States circuit court in a suit instituted in the last named court. It was contended by the plaintiff in the replevin suit that the process of attachment was directed against the property of the defendant in the attachment, and conferred no authority upon the marshal to take his property. In reply, Mr. Justice Nelson, in delivering the opinion of the court, said: "But this involves a question of right and title to the property under the federal process, and which it belongs to the federal, not to the state courts, to determine. This is now admitted; for though a point is made in the brief by the counsel for the defendant in error, that this court had no jurisdiction of the case, it was given up on the argument. And in the condition of the present case, more than this is involved; for the property having been seized under the process of attachment and in the custody of the marshal, and the right to hold ·it being a question belonging to the federal court, under whose process it was seized, to determine, there was no authority, as we have seen, under the process of the state court, to interfere with it. We agree with Mr. Justice Greer in *Peck et al. v. Jennis et al.*, 7 *How.*, 624: 'It is a doctrine of law too long established to require citation of authorities, that where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every court; and that where the jurisdiction of a court, and the right of plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court.' 'Neither can one take the property from the custody of the other by replevin, or any other process; for this would produce a conflict extremely embarrassing to the administration of justice.'"

He adds further on: "Reference was made, also, on the argument in the present case, to an opinion expressed by Chancellor Kent, in his Commentaries, as follows: 'If the officer of the United States who seizes, or the court which awards the process to seize, has jurisdiction of the subject matter, then the inquiry into the validity of the seizure belongs exclusively to the federal courts. But if there be no jurisdiction in the instance in which it is asserted, or if a marshal of the United States, under an execution in favor of the United States against A, should seize the person or property of B, then the state courts have jurisdiction to protect the person and property so illegally invaded.'"

"The error into which the learned chancellor fell, from not being practically familiar with the jurisdiction of the federal court, arose from not appreciating, for the moment, the effect of transferring from the jurisdiction of the federal court to that of the state, the decision of the question in the example given; for it is quite clear, upon the principle stated, the jurisdiction of the former, and the validity and effect of its process, would not be what the federal, but state court, might determine. No doubt, if the federal court had no jurisdiction of the case, the process would be invalid, and the seizure of the property illegal, for which the aggrieved party is entitled to his remedy. But the question is, which tribunal, the federal or state, possesses the power to determine the question of jurisdiction or validity of the process? The effect of the principal stated by the chancellor, if admitted, would be most deep and extensive in its operation upon the jurisdiction of the federal court, as a moment's consideration will show. It would draw after it into the state courts, not only all questions of the liability of property seized upon mesne and final process issued under the authority of the

federal courts, including the admiralty, for this court can be no exception for the purposes for which it was seized, but also the arrests upon mesne, and imprisonment upon final process of the person in both civil and criminal cases, for in every case the question of jurisdiction could be made; and until the power was assumed by the state court, and the question of jurisdiction of the federal court was heard and determined by it, it could not be known whether, in the given case, it existed or not. We need scarcely remark, that no government could maintain the administration or execution of its laws, civil or criminal, if the jurisdiction of its judicial tribunals were subject to the determination of another."

In *Riggs v. Johnson County*, 6 *Wall.*, *166*, plaintiff recovered judgment in a circuit court of the United States against a county for interest on railroad bonds, issued under a state statute, in force prior to the issue of the bonds, which made the levy of a tax to pay such interest obligatory on the county. A state court perpetually enjoined the county officers against making any levy of taxes to pay such bonds and the interest thereon. After the injunction granted by the state court had been issued, plaintiff applied to the circuit court in which he had recovered his judgment for a mandamus to compel the county officers to levy a tax to pay his judgment. The county officers answered, making as return the injunction previously granted by the state court. The circuit court refused to grant the application. The Supreme Court of the United States, holding that mandamus against the county officers to levy the tax was the appropriate and proper remedy in the case, said: " Authority of the circuit courts " of the United States " to issue process of any kind which is necessary to the exercise of jurisdiction and agreeable to the principles and usages of law, is beyond question, and the

power so conferred cannot be controlled either by the process of the state courts, or by any act of a state legislature. Such an attempt was made in the early history of federal jurisprudence, but it was wholly unsuccessful. Suit in that case was ejectment, and the verdict was for the plaintiff. Defeated in the circuit court, the defendant went into the state court and obtained an injunction staying all proceedings. Plaintiff applied for a writ of *habere facias possessionem*, but the judges of the circuit court being opposed in opinion whether the writ ought to issue, the point was certified to this court; and the decision was that the state court had no jurisdiction to enjoin a judgment of the circuit court, and the directions were that the writ of possession should issue. Prior decisions of the court had determined that a circuit court could not enjoin the proceedings in a state court, and any attempt of the kind is forbidden by an act of congress. * * * * *

'State courts are exempt from all interference by the federal tribunals, but they are destitute of all power to restrain either the process or proceedings in the national court. Circuit courts and state courts act separately and independently of each other, and in their respective spheres of action the process issued by the one is as far beyond the reach of the other as if the line of division between them 'was traced by landmarks and monuments visible to the eye.' * * * * * *

" Viewed in any light, therefore, it is obvious that the injunction of a state court is inoperative to control, or in any manner to affect the process or proceedings of a circuit court, not on account of any paramount jurisdiction in the latter courts, but, because, in their sphere of action, circuit courts are wholly independent of the state tribunals. Based on that consideration, the settled rule is, that the remedy of a party, whose property is wrongfully at-

tached under process issued from a circuit court, if he wishes to pursue it in a state tribunal, is trespass, and not replevin, as the sheriff cannot take the property out of the possession and custody of the marshal. Suppose that to be so, still the defendants insist that the writ was properly refused, because the injunction was issued before the plaintiff's application was presented to the circuit court. Undoubtedly circuit courts and state courts, in certain controversies between citizens of different states, are courts of concurrent and co-ordinate jurisdiction, and the general rule is, that as between courts of concurrent jurisdiction, the court that first obtains possession of the controversy, or of the property in dispute, must be allowed to dispose of it without interference or interruption from the co-ordinate court. Such questions usually arise in respect to property attached on mesne process, or property seized upon execution, and the general rule is, that where there are two or more tribunals competent to issue process to bind the goods of a party, the goods shall be considered as effectually bound by the authority under which they were first attached or seized.        *        *        *        *        *

" The argument for the defendants is, that, this rule controls the present controversy, but the court is of a different opinion, for various reasons, in addition to those already mentioned. Unless it be held that the application of the plaintiff for the writ is a new suit, it is quite clear that the proposition is wholly untenable. The theory of the plaintiff is, that the writ of mandamus, in a case like the present, is a writ in aid of jurisdiction which has previously attached, and that, in such cases, it is a process ancillary to the judgment, and is the proper substitute for the ordinary process of execution, to enforce the payment of the same, as provided in the contract. Grant that such is the nature and character of the writ, as applied in such

a case, and it is clear that the proposition of the defend-
ants must utterly fail, as in that view there can be no
conflict of jurisdiction, because it has already appeared
that a state court cannot enjoin the process or proceedings
of a circuit court.

" Complete jurisdiction of the case, which resulted in the
judgment, is conceded ; and if it be true that the writ of
mandamus is a remedy ancillary to the judgment, and is
the proper process to enforce the payment of the same,
then there is an end of the argument, as it cannot be con-
tended that a state court can enjoin any such process of a
federal court."

Mr. Justice Strong, in delivering the opinion of the
court, in the *Supervisors v. Durant, 9 Wall., 417*, said :
" Indeed, it is not now contended that mandamus is not a
proper remedy in . cases like the present, where a relator
has obtained a judgment, which can be satisfied only by
the levy of a tax, and when the proper officers of a mu-
nicipality, against which the judgment has been obtained,
refuse or neglect to levy it.    That it is a legitimate remedy
has been ruled in very many cases.

" In such a case ' the writ is  *  *  *  neither a pre-
rogative writ, nor a new suit.   On the contrary, it is a pro-
ceeding ancillary to the judgment which gives the juris-
diction, and, when issued ' it ' becomes a substitute for the
ordinary process of execution, to enforce the payment of
the same, as provided in the contract.'   It is a step toward
the execution of the judgment, and necessary to the ju-
risdiction of the court.

" It is insisted, however, that even if the circuit court may
award a mandamus to aid in the enforcement of its judg-
ments, the writ should not have been awarded in this case,
because the district court of Washington county had en-
joined the defendants against levying and collecting any

tax for the payment of the bonds and coupons, for a por-
tion of which the relator had obtained his judgment. This
injunction the defendants pleaded, and to the plea the re-
lator demurred. That such an injunction was wholly
inoperative to prevent the circuit court of the United
States from enforcing its judgment by mandamus to the
defendants to compel them to levy the tax which the law
authorized and required, is no longer to be doubted.
* * * The true reason why the injunction was not a
bar to the mandamus is, that the district court of the state
and the circuit court are independent courts, and that
neither can interfere with the process or proceedings of
the other. It would hardly be contended that a state
court can enjoin a defendant against paying a judgment
which has been, or may hereafter be, recovered in a cir-
cuit court of the United States. If it may, federal juris-
diction is a myth. It is at the mercy of the state tribunals.
Yet there is no substantial difference in principle between
the allowance of such an injunction and that of one against
a proceeding in aid of an execution—a mandamus to levy
an authorized tax to pay a judgment."

In *The Mayor v. Lord, 9 Wall., 409,* it was held: "An
injunction from a state court against a city's levying a tax
to pay certain bonds of the city cannot be set up to pre-
vent a mandamus from the federal courts ordering the city
to levy a tax to pay a judgment obtained against it in the
federal court on those same bonds." Mr. Justice Swayne,
in delivering the opinion of the court, said: "The in-
junction cannot avail the respondents. The relator was
not a party to the proceeding. If he had been, it is not
competent for a state tribunal thus to paralyze the process
issued from a court of the United States to give effect to
its judgment. This is a sound and salutary principle. It
is vital to the beneficial existence of the national courts,

and has heretofore been applied by this tribunal, upon the fullest consideration, in other cases presenting the same question."

The questions involved in the cases cited may now be regarded as finally settled in the manner decided by the Supreme Court of the United States, as we have shown. According to the opinions cited, it must follow that a state court cannot enjoin the collection of a tax levied pursuant to a mandamus issued by a federal court to enforce the payment of its judgments. There is no difference in the right to enjoin the levy and the right to enjoin the collection of a tax, the grounds of injunction being the same before and after its levy. If the mandamus of the federal court would be sufficient to defeat it in one case, it would be in the other.

2. SAME: By federal court. Citizenship. If the appellee is entitled to the injunction asked and contended for, he should go into the circuit court of the United States for the eastern district of Arkansas to seek it. That court can grant the relief, if he is entitled to it. A bill to enjoin the collection of the tax filed in that court, on the equity side thereof, would not be an original suit, but ancillary and dependent, supplementary merely to the original suit in which the mandamus was issued, and would be maintained without reference to citizenship or residence of the parties. *Freeman v. Howe,* *24 How., 460; Kippendorf v. Hyde, 110 U. S., 276; Pacific R. R. v. Missouri Pacific R. R., 111 U. S., 505.*

The judgment of the court below is, therefore, reversed, and the complaint is dismissed without prejudice.