CLAFLIN *et al.* v. BEAVER *et al.*

(*Circuit Court, S. D. Ohio.* January 4, 1890.)

REPLEVIN—WRONGFUL SEIZURE.
Where, in replevin for goods fraudulently purchased, the marshal seizes goods to which plaintiff is not entitled, and by order of court an issue is framed upon the question whether some of the goods seized were not purchased from the plaintiff, or if so purchased were duly paid for, judgment may be rendered for defendant for goods so wrongfully seized, though such goods were not described in the writ of replevin, nor in the petition therefor.

At Law.

Action by H. B. Claflin & Co. against A. M. Beaver, Myrtie Beaver, George Melvin, and B. H. Millikin.

*Kramer & Kramer*, for plaintiffs.

*W. O. Henderson* and *H. M. Maynard*, for defendants.

SAGE, J. This is an action in replevin for a lot of dry goods claimed to have been obtained by the defendant A. M. Beaver, by means of fraudulent purchases from the plaintiffs, in the fall and winter of 1885. The defendants George Melvin and B. H. Millikin are his assignees in insolvency, under a general assignment made by him on the 10th of March, 1886, covering his entire stock of dry goods and notions in his storeroom at Washington, Fayette county, Ohio. The defendant Myrtie Beaver is the wife of A. M. Beaver, and had a mortgage upon said stock of goods, made prior to the assignment. Upon the trial the defendants offered to prove that the marshal, acting under the direction of the plaintiffs' agent, who was present when the writ of replevin was executed, took possession of and delivered to the plaintiffs a lot of dry goods which were included in the assignment above referred to, and in the possession of the assignees, but not described in the petition or writ, nor included in the alleged fraudulent purchases. The trial judge excluded this testimony, for the reason that the petition was for the recovery of specific goods named, and there was no issue to which such testimony could be applied. The verdict was for the plaintiffs. A motion to set aside and for a new trial was heard, and the verdict vacated to the extent following, only; that is to say: The parties were ordered to frame an issue upon the question whether some part of the goods taken by the marshal upon the writ of replevin, and delivered to the plaintiffs, were not purchased from the plaintiffs, or, if purchased from them, were paid for prior to the beginning of this suit, and if so, what was their value at the time when they were so taken by the marshal. The court, after giving directions for the framing of the issue, further ordered that the verdicts "stand as a finding of the original issues in favor of the plaintiffs as to all the goods described in the petition, and taken on the writ, except such as shall be found upon the issues now directed, to have not been purchased from the plaintiffs by either of the defendants, or, if so purchased, were paid for prior to the beginning of this suit." *Claflin* v. *Beaver*, 35 Fed. Rep.

259. In pursuance of this order, the defendants filed their petition, alleging that the schedule of goods thereto attached contained a specific description of goods taken by the marshal in the execution of said writ of replevin, but purchased in part from persons other than the plaintiffs, and in part from the plaintiffs, and fully paid for before the commencement of this action. The defendants aver that said goods were so taken on the 16th of March, 1886; that they were of the value of $2,469.84; and that when so taken they were in the possession of the defendants Melvin and Millikin, as assignees in trust for the benefit of the creditors of A. M. Beaver. The plaintiffs filed an answer containing a general denial, and by consent a jury was waived, and the issue so joined submitted to the court. The appraised value of all the goods taken in replevin is $4,045.69. It appears from the testimony that when the marshal executed the writ he was attended by Leopold Cohn, agent of the plaintiffs, who had in his possession copies of the original bills or invoices of the alleged fraudulent purchases. He selected from the general stock of merchandise in the hands of the assignees about $1,900 worth of goods, which he identified as of those described in the bills. There was then a halt, and the goods so selected were valued by the appraisers. The marshal and Cohn then proceeded, the marshal acting under the direction of Cohn, who took the lead, to take possession of the goods described in the defendants' petition. There was no attempt to identify those goods as part of the fraudulent purchase, nor as described in the writ, but, according to the evidence, they were taken indiscriminately from the stock in possession of the assignees, the only care being to select the best. There was a lot of embroidery taken which it is not pretended was purchased from the plaintiffs, nor described in the petition or the writ. There was a lot of ladies' underwear which was yet in the original packages, and had not been put in stock. This also had been purchased from parties other than the plaintiffs. The testimony is that none of the goods described in the schedule attached to and made part of the defendants' petition were included in the fraudulent purchases; that most of them had been purchased from other parties; and that such as had been purchased from the plaintiffs were fully paid for before the commencement of this action. It is worthy of remark that the plaintiffs offered no testimony whatever upon the hearing of the issue made upon the defendants' petition. The deposition of Cohn was taken before the trial of the case, and without reference to this issue. He testifies that he selected the goods with the aid of the copies of the original bills, and that when he found he had taken any goods not described in those bills he immediately returned them to the assignees' stock. But, on the other hand, five witnesses—Melvin, assignee; Millikin, a merchant of Washington C. H., from whom a part of the stock was purchased; Silcott, also a merchant of Washington C. H., and one of the appraisers selected by the marshal; Beaver, defendant; and Ridgway, a dry-goods clerk employed by the marshal to assist him in the execution of the writ—testify that while it was true that, in the selection of the first lot of goods taken, goods not identified were returned to stock, yet, when it came to

taking the second lot,—that is, the lot described in the defendants' peti-
tion,—there was no effort at or pretense of identification, nor was there
any reference to the invoices, nor to the description contained in the writ.
Indeed, this is conceded by counsel for plaintiffs, and they claim in their
brief that neither in the original petition nor in the writ will there be
found goods described as embroideries, nor any such enumerations of
silks or flannels, or canton flannels, or hose, or dress goods, or other
goods, as are claimed by the defendants in their petition; and the coun-
sel for the plaintiffs rely upon this very fact as a complete defense to the
defendants' petition, for, they say, the defendants' only remedy is an
action in trespass against the marshal and the plaintiffs. This was urged
upon the argument, and seemed to be conceded by counsel for the de-
fendants, as the true construction of the ruling filed by the trial judge.
But reference to the text of the ruling, and to the authorities cited by
Judge SEVERENS, who presided upon the trial, makes it clear that that
construction is altogether too limited and narrow. Judge SEVERENS in
his ruling states that the petition and the writ of replevin in many in-
stances described the goods generally, e. g., so many pieces of calico, and
the marshal returned upon the writ that he had taken the goods men-
tioned and described in the writ, and delivered them to the plaintiffs
upon their giving bond. Upon trial, which was upon general pleadings,
the defendants offered to show by proof that some of the goods actually
taken on the writ were in fact either never purchased of the plaintiffs, or,
if in some instances they had been so purchased, they had been paid for.
But, upon objection, the court held that the marshal's return being that
the goods delivered upon the writ were those mentioned in the petition
and writ, and the plea being simply a denial of the petition, no issue of
the kind now proposed to be litigated was made by the pleadings, and
therefore that the offered proof could not be received, but indicated that
the matter should be the subject of a collateral issue in the case. The
order hereinbefore referred to was for the framing of an issue "upon the
question whether some part of the goods taken by the marshal upon the
writ in the cause, and delivered to the plaintiffs, were not purchased
from the plaintiffs, or, if so purchased, were paid for prior to the begin-
ning of this suit," etc. The further order was that the verdict should
stand as a finding of the original issue in favor of the plaintiffs as to all
the goods described in the petition, and taken on the writ, except such
as should be found, upon the issues directed, to have not been purchased
from the plaintiffs, or, if so purchased, to have been paid for prior to the
beginning of this suit.

Now, these orders are not so limited as counsel for the plaintiffs claim.
They are broad enough in their plain meaning to extend the investiga-
tion to all the goods described in the defendants' petition. The author-
ities cited by Judge SEVERENS in support of his rulings (*Krippendorf* v.
*Hyde*, 110 U. S. 276, 4 Sup. Ct. Rep. 27; *Covell* v. *Heyman*, 111 U. S.
176, 4 Sup. Ct. Rep. 355; and *Gumbel* v. *Pitkin*, 124 U. S. 131, 8 Sup.
Ct. Rep. 379) fully sustain the ruling made by him, and the construc-
tion now given to it. In *Krippendorf* v. *Hyde*, property in possession of

a third person, claiming ownership, was attached by the marshal on mesne process issued against the defendant, and it was held that the claimant might seek redress by ancillary proceedings in the circuit court having possession of the property. The same rule was applied in *Covell* v. *Heyman,* where property claimed by a third person was taken possession of by the marshal under a writ of replevin issued against the defendant. In *Gumbel* v. *Pitkin,* it was held that the jurisdiction of the circuit courts of the United States to administer the attachment laws of the states in which the court is held necessarily draws to itself everything properly incidental, even though it bring into the court, for the adjudication of their rights, parties not otherwise subject to the jurisdiction. In *Krippendorf* v. *Hyde,* it was argued for the appellee that Krippendorf, by an appropriate action, could have obtained the specific property, and also damages for its detention. But the court held that "the equitable powers of courts of law over their own process, to prevent abuse, oppression, and injustice, are inherent, and equally extensive and efficient, as is also their power to protect their own jurisdiction, and officers in the possession of property that is in the custody of the law." It is true that in that case the proceeding was by an ancillary bill in equity. But *Covell* v. *Heyman* was an action at law. It was a replevin case. The same rule was applied there, and *Krippendorf* v. *Hyde* was cited as an authority. Upon what principle it can be maintained that the taking of property answering the description of the writ, but not that claimed by the plaintiffs, is more an abuse of the process of the court (that being a taking which might be by mistake) than the willful and intentional taking of property not described in the writ, and not, therefore, by any possibility taken by mistake, I am not able to perceive. In either case, if the wrongful taking was intentional there was an abuse of the process of the court; but inasmuch as the taking in the first case might be by mistake, and in the second case could not be other than intentional, the taking in the second case is clearly the greater abuse of the process of the court.

Upon the testimony and the law, therefore, the defendants are clearly entitled to recover from the plaintiffs for the goods claimed in their petition. The plaintiffs, under their petition, were entitled only to the specific goods therein described. They have not only taken all the goods they could identify as described in the writ, but, in addition, a greater quantity, which was the property of the assignees for the benefit of the creditors of the defendant Beaver. The value of these goods is, according to the testimony, fully equal to the amount claimed by the defendants. Judgment will therefore be entered in favor of the defendants for the sum of $2,469.84, with interest from March 16, 1886. Judgment will be entered in favor of the plaintiffs upon the verdict for the residue of the goods taken by the marshal in the execution of the writ of replevin. The costs of the case, down to and including the trial before Judge Severens, will be taxed against the defendants. The costs of the supplementary proceedings upon the defendants' petition will be taxed against the plaintiffs.