UNITED STATES of America, Plaintiff
and Counter–Defendant,

v.

State of MICHIGAN, Defendant
and Cross–Plaintiff And
Cross–Defendant,

v.

City of Detroit, a municipal corporation,
and Detroit Water and Sewerage De-
partment, Defendant and Cross–Plain-
tiff,

v.

All Communities and Agencies Under
Contract with the City of Detroit for
Sewage Treatment Services, et al.

No. CIV.77–71100.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 6, 2006.

Jon M. Lipshultz, U.S. Department of Jus-
tice, Environment & Natural Resources Div.,
Washington, DC, Peter A. Caplan, United
States Attorney's Office, Detroit, MI, Beth S.
Gotthelf, Butzel Long, Bloomfield Hills, MI,
for Plaintiff.

Marilyn A. Peters, Dykema Gossett,
Bloomfield Hills, MI, Mark D. Jacobs, Dyke-
ma Gossett, Robert C. Walter, Detroit City
Corporation Counsel, Avery K. Williams, De-
troit, MI, Pamela J. Stevenson, Michigan
Dept of Attorney General, Lansing, MI,
James A. Smith, R. Craig Hupp, Bodman,
Longley, Detroit, MI, William W. Mistero-
vich, Mt. Clemens, MI, James E. Tamm,
O'Connor, DeGrazia, Robert A. Marzano,
Plunkett & Cooney, Bloomfield Hills, MI,
Timothy L. Cronin, Hemming, Polaczyk,
Plymouth, MI, Beth S. Gotthelf, David W.
Potts, Miles T. Macik, G. Christopher Ber-
nard, Kurt M. Brauer, Butzel Long, Bloom-
field Hills, MI, Charles E. Barbieri, Foster,
Swift, Lansing, MI, Charles E. Lowe, Lowe,
Lewandowski, Plymouth, MI, David S. Stein-
gold, David S. Steingold Assoc., John H.
Fildew, Charles S. Kennedy, III, Fildew

Hinks, Detroit, MI, Patrick B. McCauley, Sommers, Schwartz, Southfield, MI, Barry A. Seifman, Seifman & Associates, Farmington Hills, MI, Stuart Trager, Salamey Assoc., Dearborn, MI, Annette M. Lang, U.S. Department of Justice, Environmental Enforcement Section, Washington, DC, for Defendant.

## OPINION AND ORDER REGARDING SPECIAL MASTER'S ROLE AND AMENDMENT TO ORDER OF APPOINTMENT IN ACCORD WITH AMENDED FED. R. CIV. P. 53

FEIKENS, District Judge.

F. Thomas Lewand currently serves as the Special Master for this case. Some parties have now raised the issue that the 2003 amendment to Rule 53 requires this Court to update its 2002 order of appointment. In addition, some parties have objected to the referral of several particular matters to the Special Master. This order addresses those subjects.

## PROCEDURAL AND FACTUAL BACKGROUND

This Court first appointed F. Thomas Lewand to be Special Master in this case in February of 2002, following the death of the former Special Master, Charles Moon. The Order conferred upon the Special Master powers that extended "to all matters before the [c]ourt, stemming from the history and record of this case, the Orders heretofore entered in this matter, and the provisions and undertakings of the Consent Judgment." (Appointment of F. Thomas Lewand as Special Master, Feb. 8, 2002.) On Dec. 1, 2003, Fed.R.Civ.P. 53, which governs the appointment of masters, was amended significantly.

On June 1, 2005, this Court issued a notice to all parties asking for any objections to a proposed amendment to the order of appointment to clarify how a potential conflict, regarding a dispute over the repairs for an interceptor collapse, would be handled. That notice asked for any objections to Lewand continuing to assist this Court in all matters other than the interceptor dispute, specifically identifying his continued work on "oversight of the contracts entered into by the Detroit Water and Sewerage Department." (Notice at 2.) No written objections were received. On July 7, 2005, I held a hearing at which any party could appear and voice any objection, and no party objected. Accordingly, with the consent of all parties, I entered the previously-noticed order creating an ethical wall regarding the interceptor dispute but confirming and continuing the 2002 order in all other respects. (Order of July 7, 2005 at 2.)

Three days later, a report appeared in the press suggesting that the Detroit Water and Sewerage Department had improperly awarded a contract to a political supporter of this Court's then-Special Administrator, Mayor Kwame Kilpatrick. (David Josar, *Detroit Backs Contract to Mayor's Pal,* Detroit News, July 10, 2005 at 1D.) Aware of my responsibility to oversee the use of this Court's power, I immediately asked the Special Master to investigate the allegations of misuse of the Special Administrator's power. (David Josar, *Detroit backs contract to mayor's pal,* July 10, 2005 at 1D.) Later that month and into August, other articles appeared regarding alleged misuse of the Special Administrator's power in two other contracts, dealing with a communications system and a public relations effort, and I asked the Special Master to investigate those allegations as well. (John Wisely, *Detroit's radios paid by suburbs,* Detroit News, July 27, 2005 at 1A; David Josar and John Wisely, *Kilpatrick gives aide no-bid PR contract,* Detroit News, August 25, 2005 at 1A.) The Special Master was in contact with me regarding his progress, and because I felt he was making good progress, I did not set a deadline for the reports.

On September 26, 2005, many weeks after I had begun my own investigation, Oakland County filed a motion titled "Motion to Replace DWSD's Court–Appointed Special Administrator, Mayor Kwame Kilpatrick, with a Joint Management Committee." Among other things, the motion made a number of allegations regarding the contracts Lewand was in the process of investigating. One other party and an amicus expressed similar concerns in their briefing.

I denied those portions of the motion as unripe. (Opinion and Order of Jan. 6, 2006.) The Special Master's investigation was not yet complete, and I felt all parties would benefit from having the additional factual record he was developing, as well as his recommendations. In addition, I stated that all challenges could be brought as objections to that Report, depending on the outcome of his investigation into this Court's own concerns.[1] (*Id.* at 12.)

Macomb County now objects to this Court's "referral to a master of any matters raised in the Oakland Motion." (Objections to Referral to Master, 1.) As part of its motion for reconsideration and clarification, Oakland County sought clarification of the Special Master's power to conduct the investigation, his process, and requested that this Court set a deadline for his report. (Motion for Reconsideration and Clarification, 2–3.) Oakland County has since filed an additional paper objecting to "referral for a special master" based on conflicts of interest, and requesting referral of the contracting issues raised in its motion to a magistrate judge. (Request for a Magistrate Judge, 2–3.) The City of Detroit and the Detroit Water and Sewerage Department has informed this Court that it "shares some of the concerns expressed by Oakland County in its objections, although clearly not to the same extent." (Response to Request for a Magistrate Judge, 2.) It, however, opposes referral to a magistrate and instead asks this Court to appoint a second Special Master. (*Id.*) All parties that have made any filings have also indicated they have no objection to allowing Lewand to continue his work as Special Master on non-contracting related matters. (De-

troit Br., 3; Oakland Request, 3; Macomb Objections, 15.)

## ANALYSIS

### I. Whether Consent Existed at the Time the Assignment Was Given to the Special Master

Macomb claims that my order of July 7, 2005 "was silent as to whether the Special Master had been asked to act as a master with regard to any matter raised in the Oakland Motion." (Macomb at 4.) Because I could not have informed the parties I intended to have the Special Master investigate a press report that had not been published, much less a motion that would not be filed for weeks, I assume that Macomb is arguing that although it consented to the Special Master continuing to aid this Court in "oversight of the contracts entered into by the Detroit Water and Sewerage Department," that consent did not extend to oversight that involved any form of investigation of particular contracts. Alternatively, it might be arguing that Rule 53 requires an amendment to the Special Master order each and every time this Court asks its Special Master to examine a particular contract.

 Neither of these contentions has merit. All the papers filed on this issue implicitly recognize that this Court's oversight includes the power to investigate the use of its power by the Special Administrator, as they ask for various court actions that are an exercise of this power. Any supposition that it is beyond the scope of this Court's oversight authority to investigate particular uses of its own power by its own Special Administrator is incorrect on its face. All parties registered no protest to the Special Master aiding me in oversight of con-

---

1. In addition, the parties could raise any additional concerns not covered by the report separately, as those counts were dismissed for lack of ripeness. (Opinion and Order of January 6, 2006.) Oakland County's discussion of the ripeness section of the January 6, 2006 Opinion. stated there is no look-back provision for water rates, as there are for sewer rates. (Oakland Mot. 5.) In order to remedy an abuse of this Court's equitable power, I have the equitable power to order such a remedy even if such a process was not already in place, and will do so if necessary. *Cf. Swann v. Charlotte–Mecklenburg Board of Education,* 402 U.S. 1, 15, 91 S.Ct.

1267, 28 L.Ed.2d 554 (1971) (the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies); *Brown v. Board of Educ.,* 349 U.S. 294, 300, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) ("Traditionally, equity has been characterized by a practical flexibility in shaping its remedies"); *Krippendorf v. Hyde,* 110 U.S. 276, 283, 4 S.Ct. 27, 28 L.Ed. 145 (1884) (court has duty to prevent its process from being abused and the equitable powers of courts over their own process to prevent abuse are inherent, extensive and efficient).

tracts entered into by the Detroit Water and Sewerage Department. If the Special Master were prohibited from looking into particular contracts, he would be of very little help overseeing them. Thus, although their current filings may indicate an attempt to withdraw that consent, I think it is obvious that at the time, all had been given notice and had consented to the Special Master performing these functions.[2]

Second, I will turn to the potential argument that Fed.R.Civ.P. 53, with its requirement of a "clear identification of investigating duties," requires that each and every contract that might be investigated must be named specifically at the time of the order of appointment or an amendment to that order would be required. (Comments to Fed. R.Civ.P. 53(b)(2), 2003 Amendments.) This would seem to defeat the purpose of having an order of appointment in post-trial matters, because the exact issues that will arise would rarely be predictable even when the general nature and category of disputes would be. I believe this is best understood in context of the comments to the rule regarding post-trial masters [3]:

> Courts have come to rely on masters to assist in framing and enforcing complex decrees. Present Rule 53 does not directly address this practice. Amended Rule 53 authorizes appointment of post-trial masters for these and similar purposes. [...] Reliance on a master is appropriate when a complex decree requires complex policing, particularly when a party has proven resistant or intransigent. This practice has been recognized by the Supreme Court, see *Local 28, Sheet Metal Workers' Internat. Assn. v. EEOC*, 478 U.S. 421,

481–2[, 106 S.Ct. 3019, 92 L.Ed.2d 344] (1986). The master's role in enforcement may extend to investigation in ways that are quite unlike the traditional role of judicial officers in the adversary system.

(Comments to Fed.R.Civ.P. 53(a)(1), 2003 Amendments.)

Therefore, as a starting point in the analysis, I find that the parties consented to the Special Master's undertaking of investigations into contracts entered into by the Detroit Water and Sewerage Department as part of his service to this Court. That consent was in place at the time I asked the Special Master to investigate, and remained in place until the parties made their most recent filings that appear to withdraw that consent. The question now turns to whether the withdrawal of consent before the completion of that investigation and the submission of his Report and Recommendations prevents the Special Master from completing his ongoing investigations.

## II. Whether Consent Can Be Withdrawn for Ongoing Investigations and Future Investigations

Now, I must decide whether Oakland, Macomb, and Detroit should be allowed to withdraw their consent due to the conflicts they had previously accepted. Fed.R.Civ.P. 53(a) is silent on the question of whether or under what circumstances consent can be withdrawn. I note that no party has made allegations of misconduct by the Special Master (e.g., that he has violated any screening order). Thus, to allow these parties to withdraw their consent, a withdrawal of consent would have to be permitted with no showing of misconduct or other problem.

---

**2.** At least one party makes the argument that because Lewand was being shielded from the interceptor dispute, it was taken to mean that Lewand was being screened from all disputes that had anything to do with rates. This seems unlikely, because there are few actions the Detroit Water and Sewerage Department (DWSD) can take that will not affect rates. The three contract disputes differ in a key way from the interceptor dispute: the interceptor dispute pits the interests of Macomb (the party Lewand represents in other matters not before me) against the other suburban customers as well as Detroit, as Macomb argues that costs should not be billed to it but instead spread system-wide. In relation

to the three contracts, the suburban interests are not adverse to each other. I also note that DWSD cannot claim it did not know Lewand was investigating these three particular contracts, as he has no doubt contacted DWSD representatives as part of his investigation.

**3.** There appears to be confusion on behalf of some parties as to whether this case is in pretrial, trial, or post-trial posture. A consent judgment closes a case, and all activity under this case number since the first Consent Judgment was entered in 1978 has been in the post-trial phase.

Courts have generally been reluctant to allow the withdrawal of consent absent a justification rooted in changed circumstances. *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205,* 171 F.3d 1083, 1088 (7th Cir.1999); *Cobell v. Norton,* 237 F.Supp.2d 71, 80 (D.D.C.2003) (noting objectors had contemplated the Special Master activity to which they now objected). For instance, in a case where a series of un-objected to orders had been incorporated by provision into an earlier order authorizing certain activities by a master, Judge Posner, writing for the Seventh Circuit, noted that "the important point is that the board agreed to this informality, and cannot retract its agreement."[4] 171 F.3d at 1088. Similar reluctance appears in analogous statutory provisions. Once given, consent to have the magistrate try a matter may only be withdrawn on a party's motion if that party "shows extraordinary circumstances warranting such relief." 28 U.S.C. § 636(c)(6); *see also McCarthy v. Bronson,* 906 F.2d 835, 838 (2d Cir.1990). Here, there is no alleged change in circumstances that justifies these parties' withdrawal of their consent to the ongoing investigation into the oversight of these three contracts entered into by DWSD. Thus, he may complete his investigations. In addition, as I have previously stated, the Special Master is nearly finished. I expect his report on or before February 28, 2006.

I will permit the parties, however, to withdraw their consent to all future investigations. I will either hear those matters myself or refer them to a magistrate judge, as I see fit. Although I understand that Detroit and DWSD would prefer a second special master over a magistrate judge, I am unenthusiastic about the prospect of success in finding an individual with fewer conflicts than Lewand yet enough knowledge of the situation to be more efficient than a magistrate.

### III. Amendments to Current Special Master Order

■ The Sixth Circuit has adopted the general rule that uncompleted portions of suits pending when an amendment to the Federal Rules of Civil Procedure becomes effective must comply with the amended rule. *Toth v. Grand Trunk R.R.,* 306 F.3d 335, 343 n. 2 (2002). Fed.R.Civ.P. 53 was amended after the appointment of Lewand was completed but not before his duties were completed. The recent conflict disclosures have been done in accordance with the new rules. Thus, the only required amendment to the order regarding the Special Master are amendments to its content in accord with Fed.R.Civ.P. 53(b)(2).

The proposed amendments to the Special Master order, to be more specific as to his duties, follow in numbered paragraphs.

1. At the request of this Court, the Special Master shall assist with settlement efforts. He may engage in ex-parte communication with the parties and this Court toward that end. The Special Master will not be compelled to share the content of his communications with each party to this Court in these settlement efforts absent the consent of the party making the communication.

2. The Special Master shall attend meetings of the Southeast Michigan Consortium for Water Quality and any appropriate subcommittees at the request of this Court. At the request of this Court, the Special Master shall also attend hearings or meetings of other groups concerned with regional water quality infrastructure issues.

3. The Special Master shall attend regular oversight meetings with the Infrastructure Management Group.

4. The Special Master shall complete his three contract investigations, with or without sworn testimony or formal evidentiary procedure. The Special Master shall make a re-

---

**4.** The case dealt with whether a special master in a post-trial proceeding should have engaged in ex parte contacts. The court noted that "the managerial character of institutional reform litigation in the remedial phase" made it a practical choice. *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205,* 171 F.3d 1083, 1088 (7th Cir.1999). "The master is not a judge, and the judicializing of his role would slow him down and thus further protract this litigation, already in its tenth year. You do not put together a proposed budget by having lawyers make adversary presentations on each line item. And you do not request such a procedure if you want to minimize cost and time." *Id.*

port and recommendation to this Court at the conclusion of these investigations. The Local Rules regarding reports and recommendations will govern the procedures (including timing and form) regarding the report and its objections, except to the extent that they conflict with this Order. Local R. 72.1(d). The Special Master shall keep a record of all discussions and documents, etc. gathered in the course of the investigation and make it available as part of his report. In accordance with Fed.R.Civ.P. 53(g)(3), all findings of fact or conclusions of law will be reviewed de novo. The Special Master may seek the assistance of other properly screened members of his law firm in preparing his report and shall identify any such person in the record of his investigation.

5. At the request of this Court, the Special Master shall make visits to DWSD facilities that contribute to compliance with federal and state environmental laws and make a written report if this Court so requests as to their condition.

6. The Special Master shall periodically submit to this Court a record of the time he has spent on this case and the resulting payment required. This Court will review the bill, and the Special Master shall submit any further support for those bills upon request. Following its review, this Court will enter an order providing that the payment be made by DWSD.

All parties shall have until Feb. 21, 2006 to register any objections to this amendment to the order of appointment.

## CONCLUSION

This Opinion and Order decides the objections of Macomb County, those portions of the motion for reconsideration by Oakland County pertaining to the Special Master and ripeness of the contract issues, Oakland County's Request for a Magistrate Judge, and the City of Detroit's Response to the Request.

**IT IS SO ORDERED.**