LOUISA A. MILLER, administratrix, *vs.* E. A. HYDE.

Middlesex.    December 4, 1893. — June 19, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Trover — Effect of Judgment for Plaintiff in Trover on Title of Chattel converted — Estoppel — Lex Fori — Case stated — Replevin.*

The title to property which has been converted is not transferred to the defendant by the entry of a judgment for the plaintiff in an action of trover and by a levy of the execution upon the property converted, but remains in the plaintiff until he has received actual satisfaction. FIELD, C. J., HOLMES & KNOWLTON, JJ., dissenting.

A., living here, bought a horse through his agent B., who kept it for him in Connecticut. After the death of A. his administrator demanded the horse of B., who refused to deliver it to him, and afterwards sold it as his own property to C. A.'s administrator then brought an action of trover in Connecticut against B. and C., and attached the horse as the property of B. He recovered judgment against B. only, on which execution was issued and delivered to an officer, who, after an ineffectual demand on B. for its payment, levied on the horse, but before he had sold it the horse was replevied from him by C., and while C.'s suit was still pending in Connecticut, and while the judgment there against B.

remained unsatisfied, the horse was brought into this Commonwealth by the agent of C., from whom it was replevied by the administrator of A. *Held*, that the title of the administrator of A. to the horse was not devested, nor his right of recovery barred, either by bringing the action, or by obtaining judgment against B., or by procuring the horse to be attached on mesne process or seized on execution as the property of B., and that he was not estopped thereby from maintaining the action of replevin in this Commonwealth. *Held, also*, that the pendency of the replevin suit in Connecticut between C. and the officer was not a bar or defence to the replevin suit here. FIELD, C. J., HOLMES & KNOWLTON, JJ., dissenting.

The effect of an action of trover upon the title of the plaintiff to property alleged to have been converted is to be determined by the law of the forum, but where the effect of such an action brought in another State is drawn in question here in an action submitted upon a statement of agreed facts which does not state the law of such other State, the law of this Commonwealth must be applied.

REPLEVIN of a horse. Writ dated August 10, 1892. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on agreed facts, in substance as follows.

The horse in question was purchased in July, 1890, by Herbert W. Miller, a resident of Boston, through his agent, George Bryden, of Hartford, in the State of Connecticut, who thereafter kept it for him in Hartford. Miller died in September, 1890, and in the following November the plaintiff, who was his widow, having been appointed administratrix of his estate, demanded the horse of Bryden, who refused to deliver it to her, claiming to own a half interest therein. In March, 1891, Bryden sold and delivered the horse as his own property to Joseph C. Davenport and Ada L. Hyde, both residents of Connecticut.

Ancillary administration was subsequently granted to the plaintiff in Connecticut, and in November, 1891, she brought an action in that State against Bryden, Davenport, E. A. Hyde, and one Shillinglaw, for the conversion of the horse, which was in the possession of the three last named defendants, and attached the horse upon mesne process. She recovered judgment against Bryden only, on which execution was issued and delivered to an officer, who, after an ineffectual demand on Bryden for its payment, levied on the horse and advertised it for sale, but before he had sold it it was replevied from him by Davenport.

In August, 1892, Davenport intrusted the horse to the defendant, who brought it into this Commonwealth, where it was replev-

ied by the plaintiff. When this action was begun, the judgment recovered in trover against Bryden, who was financially worthless, remained unsatisfied, and the replevin suit of Davenport against the officer was still pending in Connecticut.

The case was argued at the bar in December, 1893, and afterwards was submitted on the briefs to all the judges.

*E. A. Whitman*, for the plaintiff.

*J. H. Morrison*, for the defendant.

BARKER, J. The plaintiff may maintain replevin if she is the owner of the horse, and if she is not estopped from asserting her ownership against the defendant. As administratrix of her husband's estate, she was the owner when she brought trover in Connecticut against Bryden, the bailee, who had wrongfully usurped dominion, and sold and delivered the horse to Davenport. As the horse was in Connecticut and the action of trover was in the courts of that State, the effect of the suit upon her title would be determined by the law of the forum. But as the law of Connecticut is not stated as an agreed fact, we must apply our own. Whether a plaintiff's title to the chattel is transferred upon the entry in his favor of judgment in trover has not been decided by this court. Assuming that in early times title to the chattel was transferred to the defendant upon the entry of judgment for the plaintiff in trover, at present a different doctrine is generally applied, and it is now commonly held that title is not transferred by the entry of judgment, but remains in the plaintiff until he has received actual satisfaction ; see *Atwater* v. *Tupper*, 45 Conn. 144 ; *Turner* v. *Brock*, 6 Heisk. 50 ; *Lovejoy* v. *Murray*, 3 Wall. 1 ; *Ex parte Drake*, 5 Ch. D. 866 ; *Brinsmead* v. *Harrison*, L. R. 7 C. P. 547 ; 1 Greenl. Ev. § 533 and note ; and the law has been commonly so administered by our own trial courts. We think this doctrine better calculated to do justice, and see no reason why we should not hold it to be law.

Whenever the title passes, as there has been no sale or gift, and no title by prescription or by possession taken upon abandonment by the true owner, the transfer is made by his inferred election to recognize as an absolute ownership the qualified dominion wrongfully assumed by the defendant. The true owner makes no release in terms and no election in terms to relinquish his title ; but the election is inferred by the law, to prevent in-

justice.   Formerly this election was inferred when judgment for
the plaintiff was entered, because his damages, measured by the
value of the chattel and interest, were then authoritatively as-
sessed, and the judgment brought to his aid the power of the court
to enforce its collection out of the wrongdoer's estate or by tak-
ing his person; and this was deemed enough to insure actual
satisfaction.   If so, it was just to infer that when he accepted
these rights he elected to relinquish to the wrongdoer the full
ownership of the chattel.   An election was not inferred when
the suit was commenced, although the plaintiff then alleged that
the defendant had converted the chattel, and although the writ
might contain a capias, because, owing to the uncertainties at-
tendant upon the pursuit of remedies by action, it was not just
to infer such an election while ultimate satisfaction for the wrong
was but problematical.   Forms of action are a means of admin-
istering justice, rather than an end in themselves.   When it is
seen that the practical result of a form of action is a failure of
justice, the courts will make such changes as are necessary to
do justice.   If the entry of judgment in trover usually gave the
judgment creditor but an empty right, it was not just to infer
that upon acquiring such a right he relinquished the ownership
of the chattel, and the rule that required the inference to be
then drawn was properly changed.   The ground for inferring
such an election was that upon the entry of judgment he ac-
quired an effectual right in lieu of his property, and the doctrine
that without some actual satisfaction the inference of an election
would not be drawn has been shown by experience to be neces-
sary to the administration of justice, and has been generally
acted upon, and the modern rule adopted that the plaintiff's title
is not transferred by the entry of judgment, but is transferred
by actual satisfaction.   Trover is but a tentative attempt to
obtain justice for a wrong, and until pursued so far that it has
given actual satisfaction ought not to bar the plaintiff from
asserting his title.   The present doctrine is consistent with the
general principle stated by Lord Ellenborough in *Drake* v.
*Mitchell*, 3 East, 251, and quoted in *Vanuxem* v. *Burr*, 151 Mass.
386, 389, as approved in *Lord* v. *Bigelow*, 124 Mass. 185, that " a
judgment recovered in any form of action is still but a security
for the original cause of action until it be made productive in

satisfaction to the party." Whether the holder of an unsatisfied judgment in trover can without a fresh taking maintain replevin against the same defendant, or is restricted to one action against the same person for a single tort, we do not now decide. See *Bennett* v. *Hood*, 1 Allen, 47 ; *Trask* v. *Hartford & New Haven Railroad*, 2 Allen, 331; *Bliss* v. *New York Central & Hudson River Railroad*, 160 Mass. 447. If he is so restricted, it is not because the ownership of the chattel has been transferred.

But the present plaintiff has done more than to take judgment in trover. In her action of trover she caused the horse to be attached upon mesne process, and since obtaining judgment she has caused the horse to be seized as property of Bryden in execution on the judgment as his property, and to be kept and offered for sale on the execution until, as it was about to be so sold, it was replevied by Davenport from the officer in a suit between them which is still pending in Connecticut. That suit is not a bar to this action, because it is not between the same parties. *White* v. *Dolliver*, 113 Mass. 400. *Newell* v. *Newton*, 10 Pick. 470. But we must still inquire whether, assuming that the plaintiff's property in the horse was not transferred by her judgment in trover, it was transferred by that judgment taken in connection with the facts of the attachment and levy, and also whether she is estopped by the attachment and the levy from asserting her title in this action.

In the first place, the doctrine that a mortgagee of personalty who attaches the mortgaged goods on a writ against the mortgagor cannot afterwards enforce his mortgage, is not in point. The mortgagee is not the owner, but has merely a lien, and may well be held to relinquish that lien when by the attachment he establishes another. But if the plaintiff has actual ownership, and thus the full right to do with his own property as he may choose, merely procuring it to be attached on mesne process or seized on execution as the property of another does not work a change of ownership. The owner does not sell or give away his goods. In cases which are likely to occasion such conduct, there usually is, as in the present case, a disputed title ; and it is with the hope of avoiding litigation over it that the real owner consents that the chattel shall for a special purpose only be treated as the property of another. This is

" consistent with an intention ultimately to assert title should circumstances render it desirable for him so to do "; and he may well wait to see the issue, which may be such as to avoid the litigation of the question of title. See *Mackay* v. *Holland*, 4 Met. 69, 74; *Dewey* v. *Field*, 4 Met. 381, 384; *Johns* v. *Church*, 12 Pick. 557; *Bursley* v. *Hamilton*, 15 Pick. 40, 43; *Edmunds* v. *Hill*, 133 Mass. 445, 446. Nor is there any good reason why such a use of his own property by a plaintiff in trover should be held to devest him of his ownership when it would not have that effect in other forms of action. In trover he is in legal effect asserting by his suit that the title is and will remain in himself until he receives satisfaction on a judgment, and his subjection of the chattel to attachment or to seizure on execution is simply a use which he chooses to make of his own property which does not devest him of title or hamper him in the subsequent assertion of his ownership except by the rules of estoppel. The case of *Ex parte Drake*, above cited, is an authority to the point that a plaintiff who has brought an action of detinue and taken judgment both for the detention and the value of the chattel, and has also proved his judgment in bankruptcy after having had the chattel seized on execution as the defendant's property, may nevertheless assert his ownership and have process to restore to him the chattel *in specie.* In such cases courts look to substance rather than form, and do not by inferring an election or a waiver deprive of his property a plaintiff who has unfortunately resorted to some futile method of procuring redress.

In the present case, the natural construction to be put upon the plaintiff's conduct in attaching and beginning a levy upon her own horse in a suit asserting her ownership is, that, while she contended that in fact the horse was her own, she consented that, if litigation as to the true state of title could be avoided by so selling the horse that the proceeds of the sale should be applied upon her claim for damages, she would in that event no longer assert her paramount title. Her implied offer not having been accepted, and Davenport having rendered impossible the accomplishment of her plan to avoid further litigation, she could thereupon say that all which had gone before was provisional upon the completion of the levy, and could enforce her

right of property by any proper action against Davenport, or any one who might thereafter take wrongful possession of her horse, unless she was barred by the rules of estoppel.

Upon the question of estoppel, it is material to the decision of the present case to consider only whether she is estopped as to the present defendant or his principal Davenport. Whether she has rendered Bryden, or the officer who made the attachment or the levy in the Bryden suit, liable to costs, expenses, or chance of loss, is not material upon the question whether she is barred by the doctrines of estoppel from maintaining the present action. She is now prosecuting one of several successive wrong-doers for a fresh interference with the possession of her property; and neither the present defendant, Hyde, nor Davenport, for whom he claims to be acting as agent, has done or suffered anything, or been put to any liability by reason of which the plaintiff should be estopped from asserting her title. Upon the facts, Davenport in taking the horse in replevin did not rely upon the attachment or levy, but acted in denial of their validity; and Hyde is not shown to have been influenced by them in consenting to become Davenport's agent in keeping the horse, or in any manner. Neither Hyde nor Davenport is shown to have changed his position or course of conduct relying upon the plaintiff's action in causing the attachment or the levy, and the plaintiff is not estopped by it from maintaining the present action. In the opinion of a majority of the court, the result must be,

*Judgment set aside, and judgment for the plaintiff ordered.*

HOLMES, J. As the judges are not unanimous it becomes necessary for me to state my views, which otherwise I should not do, as they have not persuaded my brethren.

I am of opinion that the plaintiff ought to be barred in this action by her recovery of judgment in trover for the same horse. I am aware that the doctrine that title passes by judgment without satisfaction is not in fashion, but I never have been able to understand any other. It always has seemed to me that one whose property has been converted has an election between two courses, that he may have the thing back or may have its value in damages, but that he cannot have both; that when he

chooses one he necessarily gives up the other, and that by taking a judgment for the value he does choose one conclusively. He cannot have a right to the value of the thing, effectual or ineffectual, and a right to the thing at the same time. The defendant is estopped by the judgment to deny the plaintiff's right to the value of the thing. Usually estoppels by judgment are mutual. It would seem to follow that the plaintiff also is estopped to deny his right to the value of the thing, and therefore is estopped to set up an inconsistent claim. In general an election is determined by judgment. *Butler* v. *Hildreth*, 5 Met. 49. *Bailey* v. *Hervey*, 135 Mass. 172, 174. *Goodyear Dental Vulcanite Co.* v. *Caduc*, 144 Mass. 85, 86. *Raphael* v. *Reinstein*, 154 Mass. 178, 179. I know of no reason why a judgment should be less conclusive in this case than any other. Of course, I am speaking of a judgment for the value of the chattel, not of one giving nominal damages for the taking. The argument from election is adopted in *White* v. *Philbrick*, 5 Greenl. 147, 150, which so far as I know is still the law of Maine, notwithstanding the remark in *Murray* v. *Lovejoy*, 2 Cliff. 191, 198. See also Shaw, C. J., in *Butler* v. *Hildreth*, 5 Met. 49, 53.

The most conspicuous cases which have taken a different view speak of the hardship of a man's losing his property without being paid for it, and sometimes cite the dictum in Jenkins, 4th Cent., Case 88, *Solutio pretii emptionis loco habetur*, which is dogma, not reasoning, or, if reasoning, is based on the false analogy of a sale ; but they leave the argument which I have stated unanswered, not, as I think, because the judges deemed it unworthy of answer or met by paramount considerations of policy, but because they did not have either that or a clue to the early cases before their mind. *Lovejoy* v. *Murray*, 3 Wall. 1, 17. *Brinsmead* v. *Harrison*, L. R. 6 C. P. 584, 587 ; *S. C.* L. R. 7 C. P. 547, 554. It is not the practice of the English judges to overrule the common law because they disapprove it, and to do so without discussion. In *Brinsmead* v. *Harrison*, Mr. Justice Willes thought he was proving that the common law always had been in accord with his position. So far as the question of policy goes, it does not seem to me that the possibility — it is only the possibility — of an election turning out to have been unwise, is a sufficient reason for breaking in upon a

principle which must be admitted to be sound on the whole, and for overthrowing the doctrine of the common law by a judicial fiat. I am not informed of any statistics which establish that judgments for money usually give the judgment creditor only an empty right.

That the view which I hold is the view of the common law I think may be proved by considering what was the theory on which the remedies of trespass and replevin were given. In Y. B. 19 Hen. VI. 65, pl. 5, Newton says: " If you had taken my chattels it is at my choice to sue replevin, which shows that the property is in me, or to sue a writ of trespass, which shows that the property is in the taker ; and so it is at my will to waive the property or not." In 6 Hen. VII. 8, pl. 4, Vavisor uses similar language, and adds, " And so it is of goods taken, one may devest the property out of himself, if he will, by proceedings in trespass, or demand property by replevin or writ of detinue," if he prefers. There is no doubt that the old law was that replevin affirms property in the plaintiff and trespass disaffirms it, and that the plaintiff has election. Bro. Abr. Trespass, pl. 134. 18 Vin. Abr. 69 (E). · Anderson & Warberton, JJ., in *Bishop* v. *Montague*, Cro. Eliz. 824. The proposition is made clearer when it is remembered that a tortious possession, at least if not felonious, carried with it a title by wrong in the case of chattels as well as in the case of a disseisin of land, as appears from the page of Viner just cited, and as has been shown more fully by the learned researches of Mr. Ames and Mr. Maitland, 3 Harv. Law Rev. 23, 326. See 1 Law Quarterly Rev. 324. I do not regard that as a necessary doctrine, or as the law of Massachusetts, but it was the common law, and it fixed the relations of trespass and replevin to each other. Trespass, and on the same principle trover, proceed on the footing of affirming property in the defendant, and of ratifying the act of the defendant which already has affirmed it. I do not see on what other ground a judgment for the value can be justified. If the title still is in doubt, or remains in the plaintiff, the defendant ought not to be charged for anything but the tortious taking. Again, cannot the plaintiff take the converted chattel on execution? And on what principle can he do so if it does not yet belong to the defendant?

I say but a word as to the practical difficulties of the prevailing rule. No doubt they can be met in one way or another. Suppose the plaintiff after judgment were to retake the chattel by his own act, it would strike me as odd to say that this satisfied the judgment, and as impossible to say that it satisfied the whole judgment, which was for the tort, as well as for the value of the property. Yet on the view which I oppose I presume that the judgment could not be collected. See *Coombe* v. *Sansom*, 1 Dowl. & Ry. 201.

It seems to me that the opinion which I hold was the prevailing one in England until *Brinsmead* v. *Harrison*. *Bishop* v. *Montague*, Cro. Eliz. 824. Fenner, J., in *Brown* v. *Wootton*, Cro. Jac. 73, 74; *S. C.* Yelv. 67; Moore, 762. *Adams* v. *Broughton*, 2 Strange, 1078; *S. C.* Andrews, 18, 19. *Buckland* v. *Johnson*, 15 C. B. 145, 157, 162, 163. Sergt. Manning's note to 6 Man. & Gr. 640. See *Lamine* v. *Dorrell*, 2 Ld. Raym. 1216, 1217. And I should add that I see a relic of the ancient and true doctrine in the otherwise unexplained notion that when execution is satisfied the title of the defendant relates back to the date of the conversion. *Hepburn* v. *Sewell*, 5 Har. & J. 211. *Smith* v. *Smith*, 51 N. H. 571, and 50 N. H. 212. Compare *Atwater* v. *Tupper*, 45 Conn. 144, 147, 148.

The only authorities binding upon us are the ancient evidences of the common law as it was before the Revolution and our own decisions. I have shown what I think was the common law. Our own decisions leave the question open to be decided in accordance with it. *Campbell* v. *Phelps*, 1 Pick, 62, 65, 70. *Bennett* v. *Hood*, 1 Allen, 47. Many cases in other States are collected in Freem. Judgments, (4th ed.) § 237.

If I am right in my general views, they apply to this case. The plaintiff recovered her judgment in Connecticut, to be sure, as ancillary administrator there, but the horse was there, and she was entitled to it there, so that her judgment recovered there passed the title. Like any other transfer of a chattel valid in the place where it was made and where the chattel was situated, it will be respected elsewhere. The Connecticut law was not put in evidence, and therefore we must presume that a judgment there has whatever effect we attribute to it on the principles of the common law. It is not argued that the defendant stands

any worse than Bryden, against whom the judgment was recovered and from whom the defendant's bailor bought the horse.

KNOWLTON, J. I am of opinion that the judgment in this case should be for the defendant. It is a general rule of law that when one is entitled to either of two inconsistent remedies for a wrong done him, the pursuit of one of them so far as to affect the interests of the other party is a conclusive election, and a waiver of the other. *Hooker* v. *Olmstead*, 6 Pick. 481. *Butler* v. *Hildreth*, 5 Met. 49, 53. *Arnold* v. *Richmond Iron Works*, 1 Gray, 434, 440. *Connihan* v. *Thompson*, 111 Mass. 270. *Washburn* v. *Great Western Ins. Co.* 114 Mass. 175. *Ormsby* v. *Dearborn*, 116 Mass. 386. *Seavey* v. *Potter*, 121 Mass. 297. *Bailey* v. *Hervey*, 135 Mass. 172, 174. *Goodyear Dental Vulcanite Co.* v. *Caduc*, 144 Mass. 85, 86. *Raphael* v. *Reinstein*, 154 Mass. 178. It is under this rule that the owner of property wrongfully taken by another is held to be precluded from claiming it after he has elected to recover the value of it from the wrongdoer. The property passes, not because there has been a sale, but because the owner has elected to receive instead of it that which represents it, and because it would be unjust to permit him to take the property after having chosen the money which is its equivalent. The principal question in cases of this kind is at what stage of the proceedings the owner shall be deemed to have made an election that binds him. On principle, and as a general rule, he should be bound by the election he makes, if in making it he goes so far as to affect the rights or interests of the other party. It would be unjust, when he may proceed only in one or the other of two opposite directions, that he should go forward in one direction in such a way as materially to affect the other party, and then turn backward and go on in the other, and compel his adversary to satisfy him in a different way.

In very early cases it was held that the owner of property unlawfully taken makes a conclusive election of his remedy which passes the property as between the parties when he takes judgment for the value of it against the wrongdoer. He thereby puts his claim for property of which he chooses to say that he has been devested into the form of a debt apparent of record, for the satisfaction of which he may at any time have execution from the court.

But where nothing more is done than to take a judgment without security there are considerations which have led in many courts to a modification of the rule in favor of the owner. Sometimes when he brings his suit in trover he is unable to find the property, and very often his judgment for the value of it cannot be made available. In taking judgment he merely puts in form and settles by adjudication a claim for the value of the property, to which he was entitled from the beginning if he chose to enforce it. He does not otherwise disturb the defendant or his property, and, while it would doubtless be more logical to say that he is concluded by his election as soon as he has recovered judgment, it is perhaps a practical rule which will more generally work out justice to hold that if he does nothing more to collect the money, and if he proceeds within a reasonable time, he may still take the property as his own. But if, having fixed the liability of the defendant for a debt by taking judgment, he says by his conduct that he intends to collect the debt, and does that which affects the interests of the defendant in that particular, he should be deemed to have made his election conclusive.

The cases which say that the rights of the parties in regard to the title are fixed, not by taking judgment, but by obtaining satisfaction, cannot mean that one may take judgment for the full value of the property, and collect one half or two thirds of the amount, and may afterward take and hold the property itself under his original title. Many of these cases were in jurisdictions where attachment on mesne process is not permitted, and where there is no security for a judgment when it is rendered. So far as I am aware, there is no case in which is considered the effect of taking judgment in a suit where there was an attachment which secured the collection of the judgment, or the effect of a partial satisfaction, or of a proceeding after judgment to enforce it by a levy on the property. It seems to me there is good ground for holding that, when one undertakes to collect the value of his property by making an attachment to secure the judgment which he may obtain, and then prosecutes his claim to judgment, he has done that which affects the rights of the other party far more than the mere recovery of a judgment on an unsecured claim. But however that may be, when after judgment the plaintiff proceeds to obtain satisfaction by a levy on

the defendant's property, and much more when he levies on the property for the value of which he obtained judgment, and advertises it for sale as the property of the defendant, he should be held to have fixed his rights and the rights of the other party in regard to the title beyond his power to change them. By taking the defendant's property to satisfy the execution he subjects him to the legal costs and expenses attendant upon the levy, and deprives him of what otherwise he would have. Even if he afterwards returns the property, he puts upon him the risk of loss or depreciation in value while it is held. If the property had not been taken on execution, the defendant might have negotiated to obtain the means of satisfying the execution by disposing of the property, or he might have attempted to satisfy it in some other way. He may have relaxed his efforts, relying on the levy, and if the plaintiff is permitted to abandon the levy and proceed in another way he may ultimately suffer loss on account of what the plaintiff did. This is equally true whether the property is that for which the plaintiff recovered his judgment or not, and if it is the same the plaintiff's act is a distinct and positive assertion that the property is the defendant's by reason of his judgment and of his purpose to collect the judgment and to apply the proceeds of the property in the satisfaction of it. Unless the rule stated at the beginning of this opinion is to be abrogated altogether, it must be held that when a plaintiff has elected to take judgment for the full value of property converted, and has then levied the execution upon property of the defendant which is subject to be taken on execution — especially if it is the property converted — he is thereby precluded from reversing his election and taking the converted property under his original title.

The case of *Ex parte Drake*, 5 Ch. D. 866, cited in the opinion of the majority of the court, was an action of detinue, where by the terms of the judgment the plaintiff was to have either the property or the ascertained value of it.

If the plaintiff cannot abandon her judgment and levy, and reclaim the horse as against Bryden, she cannot as against this defendant, who is in privity with Bryden through Davenport, who is a *bona fide* purchaser from Bryden. So far as the pending proceedings in Connecticut under the levy and the subse-

quent replevin suit there affect the title, they are binding on the plaintiff here, for the officer was acting in enforcement of her rights by her direction, and she is therefore in privity with him. His relation to her is very different from that of a mere bailee.

The Chief Justice concurs in this opinion.