DEXTER HORTON NAT. BANK OF SEATTLE, WASH., v.
HAWKINS et al.

(Circuit Court of Appeals, Ninth Circuit.　October 16, 1911.)

No. 2,018.

1. APPEAL AND ERROR (§ 71*)—APPEALABLE ORDERS.

Receivers appointed for an insolvent bank doing business in Alaska obtained a writ of assistance, under which certain boxes of coin and bullion that had been shipped by the bank to petitioner, its Seattle correspondent, in payment of overdrafts, were seized from the express company and delivered to said receivers. Petitioner by leave filed a petition in the cause, asking that the order granting the writ be set aside, and the receivers directed to deliver to it the coin and other treasure. After a hearing, the court found that title to the shipment had not passed to petitioner, and dismissed its petition. *Held*, that such findings determined petitioner's right in the property on the merits, and the order based thereon, whatever its form, was a final order, and appealable.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 71.*]

2. APPEAL AND ERROR (§ 143*)—PARTIES ENTITLED TO APPEAL—INTERVENER.

One not originally a party to an equity suit, but who claims property in the hands of receivers appointed therein, on being granted leave to file a petition for an order on the receivers to surrender the property, becomes a party to such an extent as to give him the right of appeal from an adverse decision on his claim.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 921; Dec. Dig. § 143.*]

Appeal from the District Court of the United States for the Fourth Division of the Territory of Alaska.

Suit in equity by the Tanana Valley Railroad Company and John Zug against the Washington-Alaska Bank. From an order dismissing a petition filed by leave by the Dexter Horton National Bank of Seattle, Wash., such petitioner appeals. On motion to dismiss appeal. Motion denied.

A. R. Heilig and Peters & Powell, for appellant.
Fink & White, for appellees.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge.　The appellee, Washington-Alaska Bank, is a corporation organized under the laws of Nevada, and was on January 5, 1911, doing a general banking business at Fairbanks, in the territory of Alaska.　On that date the Tanana Valley Railroad

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Company and John Zug, being creditors, and the latter a stockholder, of the bank, instituted a suit against the bank for dissolution, with a view of finally winding out its business. As a means to that end, the appellees F. W. Hawkins and E. H. Mack were appointed receivers of its properties and effects. The appellee Fred G. Noyes was later appointed receiver to succeed Hawkins and Mack. Prior to the institution of this suit the Dexter Horton National Bank was its correspondent at Seattle, Wash. The former bank, on December 24, 1910, had largely overdrawn its account with the latter, and, upon the insistence of the latter, the former on the 26th, 28th, and 30th days of December delivered to the Yukon Express Company, a common carrier, three packages in gold coin, currency, and bullion, aggregating $101,000, consigned to Dexter Horton National Bank, at Seattle, Wash., charges prepaid. The packages were forwarded by the express company from Fairbanks to Chitna, and thence by rail to the coast at Cordova, in Alaska. The receivers, claiming to be the owners of the treasure thus consigned to Dexter Horton National Bank, made demand upon the transportation company for a redelivery of the possession to them, and, being denied, applied on January 7, 1911, to the court for a writ of assistance, which being issued, the marshal seized the treasure at Cordova, and on January 27, 1911, delivered the same to the receivers.

On January 19th the appellant filed a petition in said cause, showing the facts as above related as they existed up to that date, and expressing the desire that it be given an opportunity to be heard in support of the same, to the end that the order made on January 7th be rescinded and set aside, and the receivers directed to restore the treasure to it; the Dexter Horton National Bank claiming that the property belongs to it. The entry of the court shows that the petition was presented and read, and by leave of the court was filed in the cause, whereupon it was ordered that a hearing be had in said court upon the matters and things set forth in said petition. Testimony was taken in due course, and a hearing had, resulting in a denial and dismissal of the petition. The court found, among other things, that under the agreement between the two banks and the invariable custom the title to such shipment of money, bullion, and evidence of indebtedness passed to the Dexter Horton National Bank only when actually received over the counter of that bank. Thus it was held in a negative way that the title to the three boxes of treasure so shipped and consigned to the bank at Seattle did not pass to that bank by the shipment and consignment. Based upon this finding, the petition was dismissed.

The appellee, the Washington-Alaska Bank, now moves to dismiss the appeal, for the reason that the order dismissing the petition is not a final order, and hence not one from which an appeal will lie. Counsel in his brief and argument presents two points for decision, namely, that appellant is not a party to the record, hence is not entitled to appeal, and that the order is not final, and will not support an appeal.

[1] There was and could be but one purpose on the part of the Dexter Horton National Bank in petitioning the court to rescind its order granting the writ of assistance, which was to have the court determine its right and title to the shipments of coin, bullion, and evidence of indebtedness that had been made by the Washington-Alaska Bank, and was, when taken under the writ, in transit to the Dexter Horton National Bank at Seattle. The prayer of the petition is explicit that the receivers and the marshal be directed to restore to petitioner the said coin, bullion, and currency. In the end, the question as to whether the order should be rescinded was made to depend upon the question whether title passed from the Alaska bank to the Washington bank by what was done in forwarding the coin, bullion, etc., by the former to the latter. This was the very gist and essence of the controversy.

[2] It is said that the court made no order determining the ultimate rights of the appellant to the specific property, but simply refused to vacate the order granting the writ of assistance. We think the form of the order is immaterial. The effect of it was to adjudicate the rights of the parties in and to the treasure, and the refusal to vacate the writ of assistance was, in effect, to say that the marshal and receivers were entitled to the property as against the claim of the petitioner. Such being the case, it makes but little difference by what form of procedure the controversy was brought into the record, whether by intervention, or by petition pro interesse suo. The fact remains that the parties to the suit, including the petitioner, were all agreeable to it, the court entertained it, and the trial proceeded to a practical adjudication of the differences between the parties. The petition was in the nature of an intervention in the original suit, and was filed by leave of the court. This was sufficient to constitute the party petitioning a party to the procedure, and thus gave it a standing by which it was entitled to appeal, that its rights might be finally determined.

In the case of Winchester et al. v. Davis Pyrites Co., 67 Fed. 45, 14 C. C. A. 300, it was held that, "where property in the hands of receivers is claimed by persons not parties to the suit in which they were appointed, the proper procedure is to file a petition asking the court for an order on the receivers for delivery of the property"— affirming the lower court (C. C.) 64 Fed. 664. The quotation is from the headnote. The case at bar is by petition in the original suit by a person not a party thereto to have the property in controversy restored to it.

In the case of Gumbel v. Pitkin et al., 113 U. S. 545, 5 Sup. Ct. 616, 28 L. Ed. 1128, Gumbel gained a standing in court by petition of intervention, claiming certain property which the marshal had taken into his custody. This standing was deemed sufficient upon which to justify a right of appeal as a party; the court saying, among other things:

"If the plaintiff in error has a just foundation for his assertion of error in the judgment against him, it would be a great and apparently irremediable injustice to dismiss his writ."

Speaking on the subject of procedure, the Supreme Court, in the case of Krippendorf v. Hyde, 110 U. S. 276, 287, 4 Sup. Ct. 27, 32, 28 L. Ed. 145, says:

"The form of the proceeding, indeed, must be determined by the circumstances of the case. If the original cause, in which the process has issued or the property or fund is held, is in equity, the intervention will be by petition pro interesse suo, or by a more formal, but dependent, bill in equity, if necessary. Relief, either in a suit in equity or an action at law, may properly be given, in some cases, in a summary way, by motion merely, supported by affidavits. * * * In whatever form, however, the remedy is administered, whether according to a procedure in equity or at law, the rights of the parties will be preserved and protected against judicial error, and the final decree. or judgment will be reviewable, by appeal or writ of error, according to the nature of the case."

According to these authorities the Dexter Horton National Bank became and was a party to the cause and is justly entitled to prosecute its appeal.

That the order was final is supported by Gumbel v. Pitkin, supra, and Hovey v. McDonald, 109 U. S. 150, 3 Sup. Ct. 136, 27 L. Ed. 888. In the latter case it is said:

"If he [the receiver] would have had a right to appeal, surely the opposite parties have the same right."

One can scarcely doubt that, if the order of the trial court had been for restoration of the property to petitioner, the receivers would have been entitled to appeal.

It follows, from these considerations, that the motion to dismiss the appeal should be denied; and it is so ordered.