## CARROLL v. STERN et al.

### (Circuit Court of Appeals, Sixth Circuit.  June 8, 1915.)

### No. 2613.

**1. BANKRUPTCY ⚜467—FINDINGS OF REFEREE AND DISTRICT JUDGE—CONCLUSIVENESS.**

The Circuit Court of Appeals will not set aside the concurrent findings of fact of the referee in bankruptcy and the District Judge, except in a clear case.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ⚜467.]

**2. BANKRUPTCY ⚜312—CLAIMS—ESTABLISHMENT—"ESTOPPEL."**

K. Co., the stockholder of D. Co., was adjudged bankrupt. Pending the adjudication, creditors filed a petition alleging that D. Co. was a mere department of K. Co., and that the goods of the two were intermingled and confused. A seller of goods to K. Co. shipped goods to D. Co., pursuant to orders solicited from the store occupied by D. Co. The transactions were entered in the seller's order book and the other primary records as sales to D. Co., but were posted in the ledger account of K. Co. with the identifying initial "D." The seller testified that he understood that the K. Co. had purchased the D. Co., and was running it as a retail department. D. Co., considered separately, was solvent. *Held,* that the seller was not estopped from establishing a claim against the proceeds of the D. Co.; the element of misleading. whereby one who has relied on former action would be prejudiced if the position were shifted, not existing.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 496–500; Dec. Dig. ⚜312.

For other definitions, see Words and Phrases, First and Second Series, Estoppel.]

**3. ELECTION OF REMEDIES ⚜3—BANKRUPTCY—REMEDIES OF CREDITORS.**

The seller had not elected to hold the K. Co. liable, for an election implied that the seller had a debt which could be asserted against either D. Co. or K. Co., at will, for his claim was against the party which was in fact the real buyer, and to constitute a binding election there must be a choice of two inconsistent things, not shown by a prior assertion by the seller of a personal claim against K. Co. and a subsequent reliance on a right to procure payment out of the proceeds of the D. Co.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. §§ 3, 4; Dec. Dig. ⚜3.]

**4. BANKRUPTCY ⚜308—MANAGEMENT OF ESTATE—ORDERS.**

Where K. Co., owning the stock of D. Co., was adjudicated a bankrupt, and a receiver took possession of the assets of the D. Co., an order providing that the D. Co. assets should be used to pay those creditors who had dealt with that company in good faith authorized a seller, delivering goods to D. Co. pursuant to orders solicited from the store occupied by D. Co., to establish his claim against the proceeds of the D. Co. property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 496–507; Dec. Dig. ⚜308.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio, in Bankruptcy; John E. Sater, Judge.

Petition by Leopold Stern and another, partners doing business as Stern Bros. & Co., against Robert De V. Carroll, trustee in bankruptcy

of the Herman Keck Manufacturing Company, for the allowance of a claim. From an order confirming the findings of the referee and directing the trustee to pay the claim, the trustee appeals. Affirmed.

The Keck Company, an Ohio corporation, was adjudged an involuntary bankrupt. The Duhme Company was also an Ohio corporation, and, for the purposes of the present controversy, it should be assumed that all of its capital stock, save qualifying shares, was owned by the Keck Company. Pending the adjudication in the matter of the Keck Company, creditors filed a petition alleging that the Duhme Company "is in fact a mere department and adjunct of said Keck Manufacturing Company"; that the Duhme Company was operated as the retail department of the Keck Company, under common management; and that the merchandise of the two companies was intermingled and confused. Thereupon the District Court in bankruptcy (then held by the late Judge Thompson) appointed a receiver for the Duhme Company, and he took possession of the assets. At a considerably later time, and when it was supposed that each of the corporations was insolvent in about the same degree, the District Court made an order that the receiver of the Duhme Company—who was also trustee in bankruptcy of the Keck Company—should "turn over to himself, as trustee in bankruptcy of the bankrupt herein, all of the property and assets, including cash now in his hands as such receiver, and that he keep an account thereof, separate and distinct from his account of the balance of the property of said bankrupt." By a simultaneous opinion, the District Court directed that the bankruptcy trustee should receive these effects from the receiver, and, if there was any unsold property coming from that source, should convert it into cash, and that he should "apply the funds and the proceeds of property yet to be sold to the satisfaction of debts due those who dealt in good faith with that company [the Duhme Company]."

Stern Bros. had been selling goods for years to the Keck Company, and carried a ledger account of such sales. Later their salesman solicited orders from the store occupied by the Duhme Company, reported to Stern Bros. these orders as sales to the Duhme Company, the goods were shipped to and received by the Duhme Company, and they or their proceeds or substitutes must be presumed to form part of the assets which went to the receiver. These transactions were entered in Stern Bros.' order book and other primary records as if sales to the Duhme Company, but were posted in the ledger account of the Keck Company, with the identifying initial "D." One of Stern Bros. testifies that he understood the Keck Company had bought out the Duhme Company and was running it as a retail department, so he supposed there was a liability against the Keck Company. For the total of such later indebtedness, Stern Bros. accepted the Keck Company notes—upon which nothing was ever paid—and they also appeared as creditors of the Keck Company in negotiations, extensions, etc., which were had in the unsuccessful effort to avoid bankruptcy. It finally developed that the Duhme Company, considered separately, was solvent, and claims which could be established against the proceeds of the Duhme stock could be paid in full. Stern Bros. then filed a petition to have their claim allowed as of this class, and an issue was made and a trial had before the referee. The parties and the referee seem to have regarded the controlling question to be, "To which company was credit given?" Balancing all the facts, the referee found that Stern Bros. were creditors of the Duhme Company, not of the Keck Company. On petition for review, the District Judge, in a careful opinion, confirmed this conclusion and directed the trustee to pay the claim. The trustee appeals.

Robert A. Taft, of Cincinnati, Ohio, for appellant.

C. P. Johnson, of Cincinnati, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] Under our settled practice not to set aside the concurrent fact findings

of the referee and the District Judge, except in a clear case (Wabash Ry. v. Compton, 172 Fed. 17, 21, 96 C. C. A. 603; Naylon & Co. v. Christiansen, 158 Fed. 290, 292, 85 C. C. A. 522; Constam v. Haley, 206 Fed. 260, 261, 124 C. C. A. 128), this order could not be reversed, unless we were thoroughly satisfied that the credit was given solely to the Keck Company; yet we are not inclined to dispose of the case under this rule, because we think the controversy should be decided upon somewhat broader grounds than the mere existence of the debtor and creditor relationship.

[2, 3] The trustee puts particular dependence upon the act of Stern Bros. in taking notes from the Keck Company for this debt, and in participating as a creditor of the Keck Company in the above-recited ineffective dealings. These things constitute evidence of intention, and are of importance so far as the question of intention itself would be important; but they do not amount either to an estoppel or an election which will of itself bar Stern Bros. from the remedy they now seek. The element of misleading, whereby some one who has relied upon the former action would be prejudiced if the position were shifted—and which element is essential to an estoppel—is quite lacking. Neither can an effective election be deduced from the facts. Such election would imply that Stern Bros. had a debt which could be successfully asserted against either the Duhme Company or the Keck Company at the will of the creditors. This does not seem to be the situation. Their claim was against whichever party might be in truth the real purchaser, and any position which they took on this subject, before knowing all the facts, should be classed as a mistake—"not an election, but an hypothesis." Northern Co. v. Grand Co., 203 U. S. 106, 108, 27 Sup. Ct. 27, 51 L. Ed. 109; Bierce v. Hutchins, 205 U. S. 340, 346, 27 Sup. Ct. 524, 51 L. Ed. 828.

Another requisite of a binding election is that the two things between which choice is made should be inconsistent with each other. We do not find such inconsistency between the earlier mere assertion of a personal claim against the Keck Company and the present reliance upon the right to get payment out of a particular fund; and this leads us to what we think the controlling feature.

[4] The first order of the District Court, which is now in the course of execution, and which provided that the Duhme assets should be used to pay those creditors who had dealt with that company in good faith, should be interpreted according to the purpose and effect which would have been most rightful, and which are consistent with its language. The result by which the assets of a separate—and, as the event proved, solvent—corporation were brought for administration into the estate of another and certainly bankrupt corporation, was an unusual result. It has been acquiesced in and cannot be questioned; but the bankrupt estate, which has thus presumptively profited from the exercise of such a power, should do equity to the fullest extent. The bankruptcy trustee was ultimately entitled only to the surplus which should remain out of the Duhme assets after the payment of all debts which properly attached to those assets. Thus this property came to the trustee charged with a prior trust, and it was this prior

trust which the first order and opinion of the District Court undertook to declare. We see no reason for excluding from their language creditors who had dealt with the Duhme Company as Stern Bros. had. Their right to be beneficiaries of the trust was of no less rank than that of other creditors who might have dealt with and known the Duhme Company only, but whose dealings had not operated to create the trust fund. Creditors who received an order from the Duhme Company, and shipped their goods to the Duhme Company, and so contributed to the fund to be distributed, must be regarded as among "those who dealt in good faith with that company," even though they might have supposed that the debt would be paid by the chief stockholder.

Because we regard this as the proper interpretation of the order, and because the action appealed from was in full accord with that interpretation, we think it unnecessary to decide the other questions argued; and the order of the court below is affirmed, with costs.