EQUITABLE TRUST CO. OF NEW YORK
v. CONNECTICUT BRASS & MFG.
CORPORATION et al.

(Circuit Court of Appeals, Second Circuit
March 1, 1926.)

No. 209.

1. Judgment ⊚⟶588—Judgment denying preference to United States against receivers is not res judicata of later petition to establish trust in materials intermingled with other materials in hands of receivers.

Where, on former petition by the United States in equity receivership, the government was *held* not entitled to preference over other creditors, such holding was not res judicata of later petition to establish a trust in materials intermingled with property in hands of receivers.

2. Trusts ⊚⟶352—Property intermingled while held in trust cannot be subject to payment of other debts.

Property, converted by intermingling with other property of trustee or bailee held in trust, cannot be subject to payment of debts of other creditors.

3. Election of remedies ⊚⟶7(3)—Letter of United States attorney, notifying receivers of claim held not election of remedies, precluding suit to establish trust in materials intermingled with others.

Letter of United States attorney, notifying receivers of claim, *held* not election of remedies, precluding United States from later bringing action to establish trust in materials intermingled with other property, and to direct receiver to deliver property or its proceeds.

4. Trusts ⊚⟶352—Court of equity may impress with trust property commingled with that of other property of debtor.

Court of equity may impress property commingled with other property of debtor with a trust in favor of cestui que trust.

5. Election of remedies ⊚⟶3(1)—Party is bound by election of remedy, where second remedy is based on theory irreconcilable with first.

If a second remedy sought to be invoked is based on a theory which is irreconcilable with that on which the first remedy was founded, the party is barred by binding election of remedy.

6. Election of remedies ⊚⟶3(1)—Pursuing remedy in conversion does not bar claimant from asserting title.

Pursuing a remedy in the form of conversion in an attempt to obtain justice for the wrong, until pursued so far that it has given actual satisfaction, does not bar claimant from asserting his title.

7. Election of remedies ⊚⟶3(1)—Petition for preference, filed by United States against receivers, asserting contract whereby title of raw materials remained in United States, and alleging commingling, held assertion of claim in tort for conversion, and not waiver of right of action in tort.

Petition for preference, filed by United States against receivers, asserting contract

10 F.(2d)—58

whereby United States was to furnish raw material and retain title, and alleging commingling of raw material with other property in hands of receivers, *held* an assertion of claim in tort for conversion, and not waiver of right of action in tort.

8. Election of remedies ⊚⟶3(1).

Claimant may pursue consistent remedies as long as he desires, within the periods of limitation, until justice has been administered.

Appeal from the District Court of the United States for the District of Connecticut.

Suit by the Equitable Trust Company of New York against the Connecticut Brass & Manufacturing Corporation, wherein the United States intervened, claiming a trust on certain quantities of raw copper and the proceeds thereof. From an order denying its petition (6 F.[2d] 582), the United States appeals. Reversed.

John Buckley, U. S. Atty., of Hartford, Conn., John G. Sargent, Atty. Gen., and Paul Shipman Andrews, Jerome Michael, Alexander Holtzoff and John A. McCann, Special Asst. Attys. Gen., for the United States.

Cummings & Lockwood, of Stamford, Conn. (Charles D. Lockwood and Homer Cummings, both of Stamford, Conn., of counsel), for appellee ancillary receiver.

Murray, Aldrich & Roberts, of New York City (William Roberts, of New York City, of counsel), for appellees plaintiff and creditors' committee.

Before MANTON, HAND, and MACK, Circuit Judges.

MANTON, Circuit Judge. The defendant is a Delaware corporation, and receivers were appointed for it by the United States District Court for the District of Delaware; thereafter, on September 5, 1918, ancillary receivers were appointed in the district of Connecticut. It had its plant and nearly all its assets, valued at $1,700,000, within the district of Connecticut. In a petition filed three years later, it was alleged that in 1918 the United States supplied to the defendant 2,471,066 pounds of raw copper for the manufacture of war munitions, pursuant to the terms of contracts entered into between the United States and defendant, which provided that the title to the copper would remain in the United States; that $895,200 had been expended on said contracts, leaving a balance due to the United States of 1,321,493 pounds of copper, of the value of $343,588.-18; and that the defendant had wrongfully and improperly converted to its own use this

quantity of copper. The petition alleged the indebtedness to the United States, with lawful interest, by reason of the wrongful conversion of the copper, and also a demand for payment, which was not made, and sought to recover the sum of $343,588.18, with interest. The United States claimed a preference as to this indebtedness under sections 3466 and 3467 of the Revised Statutes (Compiled Statutes, §§ 6372, 6373). This court held that the government was not entitled to such preference. Equitable, Trust Co. v. Conn. Brass & Mfg. Corp., 290 F. 714. After that decision, the government had its claim for the amount as a general creditor.

The present petition was verified November 20, 1924, and filed shortly thereafter, and sets forth that between January 31, 1918, and September 5, 1918, the United States entered into the contracts referred to above for the manufacture of sheet brass and articles enumerated in the contracts; that it was agreed between the parties that the components would be furnished by the United States— that is, copper and spelter—and that the copper and spelter were to remain the property of the United States, and that defendant was to hold them in behalf of and in trust for the United States; that between March 17, 1918, and September 1, 1920, there were delivered by the United States about 2,471,066 pounds of raw copper, and, in breach of the duties imposed by said trust, 1,321,493 pounds were wrongfully commingled by the company with its raw copper in defendant's possession, so that the copper belonging to the appellant could not be identified, distinguished, or picked out from the general mass of raw copper in its possession, and that it was therefore wrongfully converted to its own use. It alleged that 726,520 pounds came into the possession of the receiver, and that such raw copper was impressed with a trust in favor of the United States, and that the receiver holds the same, or the proceeds thereof for the purpose of said trust. It prayed that it be adjudged that the 726,520 pounds of copper, or the proceeds thereof, be so impressed with a trust in favor of the appellant, that the receiver individually and as such receiver be directed to deliver and turn over to the petitioner the proceeds of the sale or disposition, and for such further and other relief as may be just in the premises.

An answer was filed to this petition, with two affirmative defenses: First, that a previous decision of this court was res adjudicata, and bars the United States from recovery; and, second, that the United States is precluded by a binding election of remedies. On motion, pursuant to equity rule 29, the two defenses were heard separately. The District Judge overruled the first defense and sustained the second, and thereupon dismissed the petition. A decree thereafter entered is attacked upon this appeal.

[1, 2] As to the defense of res adjudicata, it is sufficient to point out that this court held only that, in this equity receivership, the government was not entitled to a preference over other creditors for debts arising out of the relation there set forth in the petition. At least, that was the only subject which we were called upon to decide. The opinion there rendered recognized that a constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form, and that where a trustee or bailee of property mingles such property with his own, so that the same cannot be identified, then the entire assets become charged with a trust for the benefit of the cestui que trust or of the bailor to the extent of the value of the property so mingled with his own. Peters v. Bain, 10 S. Ct. 354, 133 U. S. 670, 33 L. Ed. 696; Frelinghuysen v. Nugent (C. C.) 36 F. 229. The property thus converted while held in trust cannot be subject to the payment of the debts of other creditors. Sturm v. Boker, 14 S. Ct. 99, 150 U. S. 312, 37 L. Ed. 1093.

[3, 4] The second affirmative defense, that the United States had, prior to the institution of this proceeding now before the court, filed a claim with the receiver as a creditor for the amount of $343,588.18, is said to amount to an election of remedies, and to prevent the prosecution of the present proceeding, wherein the appellant seeks to enforce the terms of the trust and asks for an accounting for such part of the copper as came into the possession of and was converted by the receiver. The letter of the United States attorney, which is the claim as originally filed, notified the receiver that the United States had a claim arising from the balance of the copper, and demanded payment of $343,588.18. The nature of the claim was not set forth, other than by this letter. There was no formal proof of claim ever filed, but from the record in the first proceeding to enforce the claim for money judgment, wherein priority was sought, the claim was based upon a conversion by the receiver. That such a claim was an assertion of title in the appellant differentiates it from a claim upon contract,

where title would pass. The basis of the claim was misappropriation or wrongful appropriation of the copper, and that presupposed title in the appellant. This proceeding to direct the receiver to deliver property or its proceeds to the claimant has precedent to support it. Central Trust Co. v. Third Ave. Ry. Co. (C. C.) 181 F. 282; Dexter Horton Natl. Bank v. Hawkins, 190 F. 924, 111 C. C. A. 514. If it be proven, as alleged, that the contractual relationship amounted to a trust with title remaining in the government, that the copper had been commingled with his own property by the receiver, a court of equity may impress it with a trust in favor of the cestui que trust. Duel v. Hollins, 36 S. Ct. 615, 241 U. S. 523, 60 L. Ed. 1143; Gorman v. Littlefield, 33 S. Ct. 690, 229 U. S. 19, 57 L. Ed. 1047; National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693.

In support of the result below, we are referred principally to the case of United States v. Oregon Lumber Co., 43 S. Ct. 100, 260 U. S. 290, 67 L. Ed. 261, and our own decision in Re Jacob Berry & Co., 174 F. 409, 98 C. C. A. 360. In United States v. Oregon Lumber Co., supra, the United States brought an action at law to recover for fraudulent acquisition of certain lands, after it had brought a suit in equity to set aside the conveyance of the land by it on account of fraud. It was held that the equity suit was barred by the running of a special statute of limitations. This statute of limitations would not bar the suit at law. It was alleged that the lumber company and certain of its officers unlawfully conspired to acquire certain tracts of land in Oregon. The lands were patented in 1900, and subsequently conveyed by the purchasers to the officers of the defendant, and thereafter transferred by such officers to the corporation. The answer in the suit at law denied the material allegations of the complaint, and pleaded as a separate defense the institution and result of the equity suit. The plea went further, and pointed out that in the equity suit substantially the same facts were pleaded by the United States in the action at law; also that the United States had full knowledge of the facts complained of for more than six years before the equity suit was instituted, and that the statute of limitations applicable to such a case had run, and that no appeal was ever taken from the decree dismissing the complaint of the United States. The case went to the Supreme Court on a certified question as to whether it was barred, where more than six years had elapsed after the United States, with knowledge of the fraud, brought a suit in equity to cancel the patents for the same lands, in which equity suit a decree of dismissal was made against the United States, on the ground that the suit was barred by the statute of limitations. The Supreme Court answered this question in the affirmative, and held that there had been a binding election of remedies.

[5] It will be observed that in the equity suit in that case there was a claim of title residing in the United States, and it sought recovery of the lands in question upon the theory that title had been procured through fraud. The suit for fraud against the Oregon Lumber Company was based upon the theory that title had passed and there was fraud committed in so doing. There was an affirmance of the title thus passed. The Supreme Court held in effect that, upon discovery of the fraud, the United States was entitled either to disaffirm the transaction and recover the land, or to recognize the contract and recover damages for the fraud which brought about the contract, and that by bringing the suit in equity it disaffirmed the transaction, and thereafter it could not affirm it and sue for damages for fraud, since the two remedies were inconsistent—the first upon a disaffirmance, and the second upon an affirmance of the transfer. The rule is that, if the second remedy sought to be invoked is based upon a theory which is irreconcilable with that upon which the first proceeding is founded, the party would be barred by a binding election of remedy. Moran v. Horsky, 20 S. Ct. 856, 178 U. S. 205, 44 L. Ed. 1038; Robb v. Vos, 15 S. Ct. 4, 155 U. S. 14, 39 L. Ed. 52; United States v. Koleno, 226 F. 183, 141 C. C. A. 178; Connihan v. Thompson, 111 Mass. 272.

In Re Berry, 174 F. 409, 98 C. C. A. 360, the petitioner sought to reclaim certain stock certificates from the trustee in bankruptcy, and was held to be precluded by a binding election of remedies, in that he had theretofore offered a proof of claim for the value of the stock. In that case, the original proof of claim, which was held to be a binding election, was based upon a breach of contract. It alleged that the bankrupts were "at and before the filing of said petition, and still are, justly and truly indebted to said deponent in the sum of $42,061.83; that the said debt existed upon an open account for merchandise deposited with the firm of Jacob Berry & Co.," etc. This proof of claim waived the tort of conversion and proceeded upon the theory of assumpsit, thereby passing title to

the bankrupt or his trustee. Upon the principle we have referred to, that case is distinguishable, because, upon the theory of assumpsit, title passed, the contract was recognized, and thereafter the petitioner could not assert title in him which was necessary to reclaim the stock certificates. Standard Oil Co.' of Ky. v. Hawkins, 74 F. 395, 20 C. C. A. 468, 33 L. R. A. 739.

In the cited case, the proof of claim was filed against the receiver for property originally developed by the corporation. Thereafter the claimant proceeded to impose a trust upon the funds in the hands of the receiver, and brought a proceeding for that purpose. In overruling the plea, based upon an election of remedies, the Circuit Court of Appeals pointed out that a claimant could not be allowed to shift his position if the change would impose detriment in a legal sense to the opposing party, saying that he would be estopped by such conduct, but held that there was no estoppel.

[6] We think the question is whether the appellant elected to ratify the transaction after knowledge of the conversion. In advancing the claim of conversion, there is a claim of obtaining title through unlawful acts. Pursuing a remedy in the form of conversion in an attempt to obtain justice for the wrong, until pursued so far that it has given actual satisfaction, does not bar a claimant from asserting his title. Miller v. Hyde, 37 N. E. 760, 161 Mass. 475, 25 L. R. A. 42, 42 Am. St. Rep. 424. In writing for this court in the previous appeal, Judge Rogers pointed out that the theory of the remedy of assumpsit rested upon a transfer of the title to the converted property from the owner to the wrongdoer, and that it was the direct opposite of the theory upon which rested the theory of trespass, trover, or replevin, the theory of law being that title continued in the injured party, and said that the theory of assumpsit was the alternative remedy of law, and the resort to it was a bar to any recourse to either of the others and vice versa.

[7] The present action in equity to impress a trust rests upon the theory of wrongful use of the property, which is tantamount to a conversion. It cannot be said here that there was a waiver of the tort, and that the first proceeding was based upon an assumpsit. A different rule might there apply, for in such case there is a fictitious promise or implied assumpsit, wherein the transaction is ratified and the act results in passing title to the wrongdoer. Keener on Quasi Contracts, p. 211. The notice of claim first filed must be considered in conjunction with a petition for preference, with which we had to do on the former appeal. The petition for preference sets forth the details out of which the claim arises. It asserts substantially what is now set forth in the present petition, as to the making of the contract, delivery of the property, title remaining in the government, and misappropriation or commingling of the copper, and the wrong in so doing. This, we think, was an assertion of claim in tort for conversion. There was no waiver of the right of action in tort.

[8] In a pleading to establish an action in assumpsit, under such circumstances, the waiver must be averred, either expressly or by the manner of stating the cause of action, for without the waiver no cause of action in assumpsit could arise. Upon such a theory of action, it is not the wrong which gives the injured party the right to sue on contract; it is the wrong coupled with the waiver of the tort, and thus the waiver is an indispensable element in the cause of action. The doctrine of election of remedies is applicable only in cases where the second remedy is clearly inconsistent with the first. There is no objection to a claimant pursuing consistent remedies as long as he desires within the periods of limitation, until justice has been administered. Thomas v. Sugarman, 30 S. Ct. 650, 218 U. S. 129, 54 L. Ed. 967, 29 L. R. A. (N. S.) 250; Carroll v. Stern, 223 F. 723, 139 C. C. A. 253; American Woolen Co. v. Samuelsohn, 123 N. E. 154, 226 N. Y. 66.

It was error for the court below to sustain the second affirmative defense, and the order will be reversed.

Order reversed.